# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **DENTON LONE OAK HOLDINGS, L.P.** | § | |
| | § | **Case No. 10-40836** |
| Debtor. | § | |

## AFFIDAVIT OF JOSEPH N. DEPALMA

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TARRANT | § |

BEFORE ME, the undersigned authority, on this day personally appeared Joseph N. DePalma after being duly sworn, did upon oath state:

1. "I have personal knowledge of the facts and statements contained in this Affidavit and each is true and correct. I have not been convicted of a felony or misdemeanor involving moral turpitude. I am over the age of eighteen (18) years and am competent to testify.

2. I am offering this affidavit in support of Denton Lone Oak Holdings, L.P.'s ("Debtor") (a) Emergency Amended Motion to Approve Payment of Prepetition Wages, Salaries, Commissions, Reimbursable Expenses and benefits in the Ordinary Course of Business Nunc Pro Tunc to the Petition Date and (b) Motion For Entry of Interim Order Authorizing Use Of Cash Collateral Pursuant to 11 U.S.C. § 363 ("Cash Collateral Motion").

3. I am the president and chief executive officer of DePalma Hotel Corporation ("DePalma Hotel"). DePalma Hotel is a party to a management agreement with the Debtor. The Debtor owns and operates a Denton Holiday Inn & Suites located at 1434 Centre Place Drive, Denton, Texas 76205 ("Hotel"). As a principal of DePalma, I am aware of the financial status and condition of the Debtor, the Debtor's accounting systems, and the creditors of the Debtor.

4. The Debtor's business has been adversely impacted by the general economic downturn in the United States, which has caused the revenues of the hotel to be insufficient to cover all of the expenses of the Debtor. On March 15, 2010 (the "Petition Date"), the Debtor filed its bankruptcy petition.

5. On July 30, 2007, the Debtor executed a (a) promissory note in the principal amount of $12,850,000 (the "Original Note") in favor of Morgan Stanley Mortgage Capital Holdings, LLC ("Lender"), (b) Deed of Trust and Security Agreement ("Deed of Trust") and (c) Assignment of Leases and Rents ("ALR"). The Deed of Trust and ALR are collectively referred to as Security Instruments. On June 2, 2008, the Original Note was amended and restated by (a) the amended and restated promissory note dated June 2, 2008 (effective May 8, 2008) in the principal amount of $12,036,938.10 ("Amended Note") in favor of Lender and (b) a Loan Reinstatement and Modification Agreement. On July 10, 2009, the Debtor further modified the Amended Note by entering into the (a) Second Loan Reinstatement and Modification Agreement, (b) Cash Management Agreement and (c) Restricted Account Agreement (collectively, the "Second Modification"). Lender is the current holder of the Note. The present principal balance of the Amended Note is approximately $11,536,938.10.

6. The Amended Note is secured by the Security Instruments and Second Modification, which purported to grant Lender, at a minimum, a lien in certain of the Debtor's assets, specifically the Hotel, and any additional land, improvements, easements, fixtures and personal property, leases and rents, insurance proceeds, condemnation awards, and tax refunds (the "Collateral") including, without limitation, its cash from the operation of the Hotel (the "Cash Collateral").

7. The Debtor generates revenue to operate and pay its bills from operating the Hotel. Lender is the only entity that has an interest in the Cash Collateral. The Debtor is not able to obtain financing otherwise. Debtor needs to be able to use the Cash Collateral in order to operate and manage the business after the Petition Date and until the time of confirmation. The Debtor does not have sufficient available sources of working capital and financing to carry on the operation of its business without the use of Cash Collateral. The ability of the Debtor to maintain business relationships with vendors and suppliers and to finance its ongoing operations and provide services are essential to the Debtor's continued viability. The Debtor's critical need for financing is immediate. Without the use of the Cash Collateral, the continued operation of the Debtor's business would not be possible, and serious and irreparable harm to the Debtor and its estate would occur. The monthly budget for the Debtor's business for the 90-days following the Petition Date is attached as Exhibit "A" to the Cash Collateral Motion.

8. Debtor's cash is replenished from the daily operation of the Hotel and the Lender should be given a post-petition lien in cash generated from the operation of the Hotel. A replacement lien given to Lender should provide them with adequate protection for any lien position.

9. Pursuant to its agreement with the Debtor, DePalma is responsible for paying the Debtor's employees from the Debtor's funds. The employees of the Debtor are paid semi-monthly and were paid for wages through March 12, 2010 in the amount of

$38,418.43. DePalma and Debtor discovered after the filing of the petition that the wages paid through March 12, 2010 for fifty seven (57) hotel employees in the amount of $38,418.43 did not clear the Debtor's accounts until after the petition date. Therefore, the pre-petition wages of Debtor were paid without authority from the court due to a good faith error caused by a miscommunication between DePalma and the Debtor. None of the employees are insiders and none of the employees were paid in excess of $3,000. The Debtor owes or owed employees of the Hotel for (a) the services performed or costs incurred after between February 27, 2010 and March 12, 2010 in the amount of $38,418.43 that have already been paid in error and (b) services performed or costs incurred after March 12, 2010 and before the filing date, March 15, 2010 in an amount not to exceed $8,500 (the "Prepetition Employee Obligations"). The total amount pre-petition wages owed and owing by the Debtor to its employees does not exceed $46,918.43.

10. The Debtor's ability to preserve its business and successfully reorganize is dependent on the continued services and expertise of its employees. In addition, if the Debtor fails to pay the Prepetition Employee Obligations in the ordinary course, its employees will suffer personal hardship. Such a result would have an unsettling impact on employees who are concerned with the Chapter 11 filing and would likely result in their resignation. This would have a disastrous effect on the Debtor.

Further Affiant sayeth not."

AFFIANT

JOSEPH N. DEPALMA

SUBSCRIBED AND SWORN TO BEFORE ME on the __18__ day of March, 2010, to certify which witness my hand and official seal.

Notary Public in and for
the State of Texas

LORI J. MUGGLER
MY COMMISSION EXPIRES
June 22, 2012

AFFIDAVIT OF MIKE BLACKWELL