
EOD
03/19/2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| DENTON LONE OAK HOLDINGS, L.P., | Case No. 10-40836 |
| Debtor. | |

## AGREED INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL

**CAME ON FOR HEARING** on this date the *Motion For Entry of Interim Order of Debtor-In-Possession Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363* [D.E. 3] (the "Motion") filed by Denton Lone Oak Holdings, L.P., the debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "Debtor"), seeking an Interim Order (i) authorizing the Debtor to use Cash Collateral (defined below) and (ii) the grant of a Replacement Lien and the Superpriority Claim (as defined herein) to and for the benefit of Morgan Stanley Mortgage Capital Holdings, LLC ("Lender") to the extent of any diminution in value of Lender's Collateral, and after due and sufficient notice of the Motion under the existing circumstances and considering the arguments of counsel and all evidence proffered regarding the Motion, and good and sufficient cause appearing therefore:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:**

A. **Commencement of the Case.** On March 15, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code, commencing the above-captioned Chapter 11 bankruptcy case (the "Bankruptcy Case"). The Debtor is continuing in possession of its property, and operating and managing its business, as debtor-in-possession, pursuant to Bankruptcy Code §§ 1107 and 1108.

B. **Jurisdiction.** This Court has jurisdiction over the Bankruptcy Case and the

Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion presents a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.    **Prepetition Indebtedness to the Lender and Security Therefor.** On July 30, 2007, the Debtor executed a (a) promissory note in the principal amount of $12,850,000 (the "Original Note") in favor of Morgan Stanley Mortgage Capital Holdings, LLC ("Lender"), (b) Deed of Trust and Security Agreement ("Deed of Trust") and (c) Assignment of Leases and Rents ("ALR"). The Deed of Trust and ALR are collectively referred to as "Security Instruments." On June 2, 2008, the Original Note was amended and restated by (a) the amended and restated promissory note dated June 2, 2008 (effective May 8, 2008) in the principal amount of $12,036,938.10 ("Amended Note") in favor of Lender and (b) a Loan Reinstatement and Modification Agreement. On July 10, 2009, the Debtor further modified the Amended Note by entering into the (a) Second Loan Reinstatement and Modification Agreement, (b) Cash Management Agreement and (c) Restricted Account Agreement (collectively, the "Second Modification"). Lender is the current holder of the Amended Note. The present principal balance of the Amended Note is approximately $11,536,938.10. The Amended Note is secured by the Security Instruments and Second Modification, which grant Lender, at a minimum, a lien in certain of the Debtor's assets, specifically the Denton Holiday Inn & Suites located at 1434 Centre Place Drive, Denton, Texas 76205, and any additional land, improvements, easements fixtures and personal property, leases and rents insurance proceeds, condemnation awards, tax refunds including, without limitation, its cash from the operation of the hotel (the "Collateral"). These documents are referred to herein as the "Lender Loan Documents."

D.    The Debtor acknowledges that the Lender has asserted that the Debtor's monetary obligations to Lender under the Lender Loan Documents are secured by security interest(s) in

cash proceeds and other cash equivalents from the operation of the hotel. All cash and cash equivalent proceeds of the Collateral constitute cash collateral within the meaning of 11 U.S.C. § 363(a) (the "Cash Collateral").

E.  **Cause.**  Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor has requested the immediate entry of this Interim Order. The Debtor does not have sufficient available sources of working capital and financing to carry on the operation of its business without the use of Cash Collateral. The ability of the Debtor to maintain business relationships with vendors and suppliers and to finance its ongoing operations and provide services are essential to the Debtor's continued viability. The Debtor's critical need for financing is immediate. Without the use of the Cash Collateral, the continued operation of the Debtor's business would not be possible, and serious and irreparable harm to the Debtor and its estate would occur. As such, entry of this Interim Order will minimize the disruption of the Debtor's existing business, will increase the possibility for a successful reorganization of the Debtor, and is in the best interest of the Debtor, its creditors, and any other parties in interest.

F.  The terms and conditions of this Interim Order are fair and reasonable, were negotiated by the parties in good faith and at arm's length, and the parties otherwise have acted in good faith.

G.  **Notice.**  The Debtor has provided notice of the relief requested in the Motion to the Office of the United States Trustee for the Eastern District of Texas, to the Lender, to counsel for the Lender, and to the twenty (20) largest unsecured creditors. No creditors' committee has yet been appointed in the Bankruptcy Case.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  The Motion is granted as set forth in this Interim Order. Any objections to the

Motion that have not been withdrawn, waived, or settled are hereby denied and overruled. This Interim Order shall immediately become effective upon its entry.

2. The paragraphs contained in the foregoing preamble and conclusions are incorporated herein by reference as part of the Court's decree.

### AUTHORIZING USE OF CASH COLLATERAL

3. Pursuant to Bankruptcy Code §§ 105(a) and 363(c), the Debtor is authorized to use Cash Collateral upon the terms and conditions set forth in this Interim Order. Debtor is further authorized to sell its inventory in the ordinary course of its business.

4. The Debtor's use of Cash Collateral is limited to the payment of the approved expenses (the "Approved Expenses") set forth in the budget, which is attached hereto as Exhibit "A" (the "Budget") and which was supplemented on March 17, 2010 [D.E. 10], and only to the extent the Approved Expenses are incurred by the Debtor during the interim period. The Debtor is authorized to use Cash Collateral only to pay the operating expenses of the Debtor that are the Approved Expenses listed in the Budget within a 10% variance of the amounts set forth on the Budget (calculated on a line item basis).

5. Notwithstanding the fact that the Debtor has proposed a 90-day Budget, the Debtor's authority to use Cash Collateral under this Interim Order shall terminate upon the earlier of: (i) the hearing on the motion to enter a final order authorizing Debtor's use of Cash Collateral (ii) April 1, 2010, or as soon thereafter that the Court can schedule a hearing, or (iii) such later date and time that is agreed to by Lender in writing and without further notice or order.

6. Debtor shall deposit the Cash Collateral into a segregated, interest-bearing, debtor-in-possession cash collateral account (the "Cash Collateral Account") established by the Debtor.

7. The provisions of this Interim Order shall be binding upon Lender and the Debtor. Any of the requirements of this Interim Order may be waived or modified by Lender and the Debtor jointly in writing.

8. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

## ADEQUATE PROTECTION

9. **Replacement Lien.** As adequate protection for any Cash Collateral expended by the Debtor in accordance with this Interim Order, Lender is hereby granted, pursuant to Sections 361(1) and 363(e) of the Bankruptcy Code, a post-petition lien (the "Replacement Lien") in all post-petition Collateral to secure an amount of Lender's prepetition claims, which shall be equal to the aggregate diminution in the value of the Collateral resulting from Debtors' use of the Cash Collateral during the Interim Period (whether such diminution is a result of, arises from, or is attributable to, the imposition of the automatic stay, the use or disposition of Cash Collateral, or the physical deterioration, consumption, use, shrinkage, disposition, or decline in market value or otherwise); provided, however, that the Replacement Lien shall not attach to claims or causes of action of the Debtor that arise solely under Chapter 5 the Bankruptcy Code. The Replacement Lien shall be subject only to valid, enforceable, and perfected liens and security interests in Debtors' assets, as prepetition debtors, that existed on the Petition Date and that are not subject to avoidance under the Bankruptcy Code and that are superior in priority to the Lender's liens. The Replacement Lien shall be senior in priority to any lien created in respect of debtor in possession financing. The Replacement Lien shall attach to all Debtor's property and assets, of any kind or nature whatsoever, whether now owned or hereafter acquired by the Debtor, and all proceeds, rents, or profits thereof that were either subject to the Lender's prepetition liens or acquired

because of Debtor's use and/or expenditure of Cash Collateral. The Replacement Lien hereunder shall at all times be senior to the rights of the Debtor and any successor trustee or estate representative in these cases or any subsequent cases or proceedings under the Bankruptcy Code. Any security interest or lien upon the Collateral or Cash Collateral that is avoided or otherwise preserved for the benefit of Debtors' estates under Section 551 or any other provision of the Bankruptcy Code shall be subordinate to the Replacement Lien in such asset. Nothing herein shall be deemed to expand the scope of the Lender's liens to items that would not have otherwise been subject to its Lien prepetition.

10. The Replacement Lien granted to Lender by this Interim Order shall be perfected by operation of law upon execution and entry of this Interim Order by the Court. Lender shall not be required to take any action, including, without limitation, the filing of financing statements, mortgages, deeds of trust, security deeds, notices of lien, or other similar documents or instruments in any jurisdiction, or take any other action, to validate or perfect such Replacement Lien. Notwithstanding the foregoing, if Lender, in its sole discretion, nonetheless chooses to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or other similar documents or instruments or otherwise confirm perfection of such security interests and liens, the Lender is authorized to effect such filings and recordations, and all such financing statements, deeds of trust, or similar documents shall be deemed to have been filed or recorded as of the Petition Date and shall not be in violation of the automatic stay.

11. **507(b) Superpriority Claim.** In addition to the Replacement Lien, but only to the extent that the Replacement Lien is inadequate, Lender shall have a priority claim (the "Superpriority Claim") to the fullest extent permitted under Section 507(b) of the Bankruptcy Code equal to the aggregate diminution in the value of the Collateral resulting from Debtors' use

of the Cash Collateral during the term of this Interim Order, and such claim shall have priority over, and be senior to, all other administrative claims. The Superpriority Claim granted pursuant to this Interim Order shall also be senior in priority to any superpriority lien created in respect of debtor in possession financing.

12. **Reservation of Debtor's Rights.** This Interim Order is not intended to affect or impair the right of the Debtor or any other party to object to the extent, validity, amount and/or perfection of any prepetition lien asserted by Lender and all such rights are specifically reserved.

13. **General Reservation of Rights.** The terms of this Interim Order shall have no effect on the terms to be included in any final order.

Signed on 3/19/2010

*Brenda T. Rhoades* SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

**APPROVED AS TO FORM:**

| | |
|---|---|
| **HIERSCHE, HAYWARD, DRAKELEY & URBACH, P.C.** | ALSTON & BIRD, LLP |
| | By: */s/ Josh Martin* |
| By: */s/ Russell W. Mills* | Josh Martin, SBN 24037030 |
| Russell W. Mills SBN 00784609 | |
| Jason M. Katz, SBN 24038990 | Chase Tower, Suite 3601 |
| | 2200 Ross Avenue |
| 15303 Dallas Parkway, Suite 700 | Dallas, Texas 75201 |
| Addison, Texas 75001 | |
| (972) 701-7000 Telephone | Phone: 214-922-3413 |
| (972) 701-8765 Facsimile | Fax: 214-922-3833 |
| | |
| **ATTORNEYS FOR DEBTOR AND DEBTOR-IN-POSSESSION** | **ATTORNEYS FOR MORGAN STANLEY CAPITAL HOLDINGS, LLC** |

Holiday Inn Denton
90 DAY FINANCIAL FORECAST MARCH 15 - JUNE 15, 2010

| ACCOUNT NAME | March 15-April 15 FCST | April 15-May 15 FCST | May 16 - June 15 FCST | TOTAL FCST |
|---|---|---|---|---|
| Rooms Available | 4896 | 4590 | 4896 | 14382 |
| Rooms Occupied | 2900 | 3350 | 2650 | 8900 |
| Average Rate | $95.17 | $102.54 | $95.19 | $97.95 |
| Occupancy % | 59.29% | 72.98% | 54.13% | 61.88% |
| | | | | |
| Rooms Revenue | 276000 | 343500 | 252250 | $871,750 |
| Salaries & Wages | 31900 | 36850 | 29150 | $97,900 |
| Salaries & Wages POR | $11.00 | $11.00 | $11.00 | $11.00 |
| Tax, Ben. Other | 7050 | 8144 | 6442 | $21,636 |
| Tax, Ben. Other POR | $2.43 | $2.43 | $2.43 | $2.43 |
| Other Expenses | 17835 | 20503 | 16298 | $54,735 |
| Other Expenses POR | $6.15 | $6.15 | $6.15 | $6.15 |
| Department Profit | $219,215 | $277,904 | $200,360 | $697,479 |
| Dept. Profit POR | $75.59 | $82.96 | $75.61 | $78.37 |
| | | | | |
| Restaurant Revenues | $18,000 | $22,000 | $18,000 | 58000 |
| Banquet Food Revenue | $29,000 | $28,000 | $25,000 | $82,000 |
| Total Food Revenues | $47,000 | $50,000 | $43,000 | 140,000 |
| Other F&B Revenue | $7,000 | $6,000 | $6,000 | 19,000 |
| Net Food Revenue | $54,000 | $56,000 | $49,000 | 159,000 |
| Net Food Rev POR | $18.62 | $16.72 | $18.49 | $17.87 |
| Total Covers | | | | 0 |
| Covers POR | 0.0 | 0.0 | 0.0 | 0.0 |
| Food Cost | $15,510 | $16,500 | $14,190 | 46,200 |
| Sundry Cost | | | | 0 |
| Salaries & Wages | $24,325 | $24,500 | $21,175 | 70,000 |
| Tax, Ben. Other | $6,397 | $6,444 | $5,569 | 18,410 |
| Other Expenses | $5,157 | $13,348 | $4,680 | 23,185 |
| Department Profit | $2,611 | -$4,792 | $3,386 | 1,206 |
| Restaurant Beverage | $6,500 | $10,000 | $8,500 | $25,000 |
| Lounge Beverage | | | | $0 |
| Banquet Beverage | $7,000 | $4,000 | $5,000 | $16,000 |
| Total Revenues | $15,500 | $14,000 | $11,500 | $41,000 |
| Beverage Rev POR | $5.34 | $4.18 | $4.34 | $5 |
| Beverage Cost | $3,720 | $3,360 | $2,760 | $9,840 |
| Salaries & Wages | $2,930 | $2,645 | $2,174 | $7,749 |
| Tax, Ben. Other | $770 | $696 | $572 | $2,098 |
| Other Expenses | $0 | $0 | $0 | $0 |
| Department Profit | $8,080 | $7,298 | $5,995 | $21,373 |
| | | | | |
| Telephone Revenues | $328 | $379 | $299 | $1,006 |
| Phone Rev, POR | $0.11 | $0.11 | $0.11 | $0.11 |
| Telephone Cost | $1,673 | $1,673 | $1,673 | 5,019 |
| Salaries & Wages | | | | 0 |
| Tax, Ben. Other | | | | 0 |
| Other Expenses | | | | 0 |
| Department Profit | -$1,345 | -$1,294 | -$1,374 | -4,013 |
| | | | | |
| Other Income | $7,250 | $8,375 | $6,625 | 22,250 |
| Other Cost | $2,900 | $3,350 | $2,650 | 8,900 |
| Department Profit | $4,350 | $5,025 | $3,975 | 13,350 |

| Month of: | March 15-April 15 FCST | April 15-May 15 FCST | May 16 - June 15 FCST | TOTAL FCST |
|---|---|---|---|---|
| NET REVENUES | $353,078 | $422,254 | $319,674 | $1,095,006 |
| TOTAL EXPENSES | $120,167 | $138,113 | $107,331 | $365,611 |
| GROSS OPER. INCOME | $232,910 | $284,141 | $212,343 | $729,394 |
| | | | | |
| A&G Salaries & Wages | $12,475 # | $12,475 # | $12,475 | $37,425 |
| A&G Tax, Ben. & Other | $3,368 | $3,368 | $3,368 | $10,105 |
| A&G Other Expenses | $17,901 | $21,408 # | $16,207 | $55,517 |
| Department Total | $33,744 | $37,252 | $32,051 | $103,047 |
| | | | | |
| A&BP Salaries & Wages | $8,445 | $8,445 | $8,445 | $25,335 |
| A&BP Tax, Ben. & Other | $2,086 | $2,086 | $2,086 | $6,258 |
| A&BP Other Expenses | $12,287 | $14,694 | $11,125 | $38,106 |
| Department Total | $22,818 | $25,225 | $21,656 | $69,699 |
| | | | | |
| Total Energy | $13,775 | $15,913 | $12,588 | $42,275 |
| Total Energy PAR | $2.81 | $3.47 | $2.57 | $2.94 |
| Total Energy POR | $4.75 | $4.75 | $4.75 | $4.75 |
| | | | | |
| M&R Salaries & Wages | $7,894 | $7,894 | $7,894 | $23,682 |

EXHIBIT A

| | | | | |
|---|---|---|---|---|
| M&R Tax, Ben. & Other | $2,005 | $2,005 | $2,005 | $6,015 |
| M&R Other Expenses | $9,215 | $11,021 | $6,344 | $26,580 |
| Department Total | $19,114 | $20,920 | $18,243 | $58,277 |
| | | | | |
| Franchise Fees | $25,116 | $31,259 | $22,955 | $79,329 |
| | | | | |
| Management Fees | $10,592 | $12,668 | $9,590 | $32,850 |
| | | | | |
| Total Gen. & Unapp | $125,160 #| $143,235 | $117,081 | $385,477 |
| | | | | |
| Gross Oper. Profit | $107,750 | $140,905 | $95,262 | $343,918 |
| GOP        POR | $37.16 | $42.06 | $35.95 | $38.54 |
| | | | | |
| Capital Leases | $4,497 | $4,497 | $4,497 | $13,491 |
| Real Estate Taxes | $18,500 | $18,500 | $18,500 | $55,500 |
| Insurance | $5,250 | $5,250 | $5,250 | $15,750 |
| FF&E | $14,177 | $14,177 | $14,177 | $42,531 |
| Asset Mgmt Fees | | | | $0 |
| Settlements/Taxes | | -$72,000 | | -$72,000 |
| Application of Escrow | | | | $0 |
| | | | | |
| Net Oper. Profit | $65,326 | $170,481 | $52,838 | $288,646 |
| | | | | |
| Debt Service | $0 | $0 | $0 | $0 |
| | | | | |
| Net Income (Loss) | $65,326 | $170,481 | $52,838 | $288,646 |