UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| DENTON LONE OAK HOLDINGS, L.P., | Case No. 10-40836 |
| Debtor. | |

## AGREED FINAL ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL

Upon the *Motion For Entry of Final Order of Debtor-In-Possession Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363* [D.E. 3] (the "***Motion***") filed by Denton Lone Oak Holdings, L.P. (the "***Debtor***"), seeking authorization under Bankruptcy Rules 4001(b) and 4001(c)(1) to (i) use Cash Collateral (defined below) of Morgan Stanley Mortgage Capital Holdings LLC (the "***Lender***") and (ii) grant the Replacement Lien and the Superpriority Claim (defined below) to Lender to the extent Lender's Collateral suffers a diminution in value because of Debtor's use of Cash Collateral; the interim hearing having been held on March 18, 2010 (the "***Interim Hearing***"); the interim order having been entered on March 19, 2010 (the "***Interim Order***"); the final hearing having been held on April 29, 2010 (the "***Final Hearing***"); and upon all pleadings filed with the Court, including the objection and request for adequate protection filed by Lender [D.E. 56] and the record at the Final Hearing; and after due deliberation and consideration and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:**

A.  <u>Commencement of the Case</u>. On March 15, 2010 (the "***Petition Date***"), Debtor filed its voluntary petition (the "***Petition***") under Chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***"). Debtor continues to operate its business and manage its assets as a debtor in possession under 11 U.S.C. §§ 1107 and 1108.

B.  <u>No Creditors' Committee</u>. The United States Trustee (the "***UST***") has not

appointed a creditors' committee in this case. If the UST subsequently appoints a creditors' committee, it shall be hereinafter referred to as the "***Committee***."

C. <u>Jurisdiction and Venue</u>. This Court has subject matter jurisdiction over these proceedings, the parties, and property affected hereby under 28 U.S.C. §§ 157(b) and 1334. This proceeding is a core matter under 28 U.S.C. § 157(b). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

D. <u>Notice</u>. Debtor served the Notice of the Final Hearing [D.E. 15], by U.S. mail to: (i) parties who received notice of the Interim Hearing; (ii) parties that have filed a request for special notice with this Court; (iii) counsel to Lender; (iv) counsel for any Committee; (v) all creditors who have recorded a financing statement on Debtor's personal property or a lien on any of Debtor's property; and (vi) the UST. Such notice satisfies Bankruptcy Rule 4001(b).

E. <u>Prepetition Indebtedness and Security Therefor</u>. Subject to the rights set forth in Paragraph 6 below, Debtor agrees and stipulates as follows:

a) Lender has extended to Debtor certain prepetition financing and other financial accommodations, including: (i) a Promissory Note, dated July 30, 2007, in the principal amount of $12,850,000.00 (the "***Original Note***"); (ii) the Deed of Trust and Security Agreement dated July 30, 2007 ("***Deed of Trust***"); (iii) the Assignment of Leases and Rents, dated July 30, 2007 (the "***ALR***"); (iv) the Amended and Restated Promissory Note, dated June 2, 2008 (effective May 8, 2008) ("***Amended Note***"); (v) the Loan Reinstatement and Modification Agreement, dated June 2, 2008 (the "***First Modification Agreement***"); and (vi) the (a) Second Loan Reinstatement and Modification Agreement, (b) Cash Management Agreement (c) Restricted Account Agreement, and (d) Subordination and Conditional Assignment of Management Agreement, dated July 10, 2009 (collectively, the "***Second Modification Agreement***" and, collectively, with the

Original Note, the Deed of Trust, the ALR, the Amended Note, and the First Modification Agreement, the "***Loan Documents***").

b) The current amount due and owing to Lender under the Amended Note is $11,766,131.54 (the "***Outstanding Amount***."[1] The term "***Prepetition Indebtedness***" shall mean and include, without duplication, the Outstanding Amount and any other amounts or obligations due and owing under the Loan Documents, and any fees and other costs, expenses, and charges owing in respect of, such amounts, including any reasonable attorney, accountant, financial advisor and other fees and expenses all only as provided for in the Loan Documents.

c) To secure the Prepetition Indebtedness, Debtor granted to Lender liens and security interests (the "***Prepetition Liens***") on and in substantially all Debtor's real and personal property, as more particularly and only as set forth in the Loan Documents (the "***Collateral***"), including Debtor's cash and cash equivalents from the operation of the hotel (the "***Cash Collateral***").

d) As of the Petition Date and immediately before giving effect to this Final Order, the Loan Documents are valid, binding agreements and obligations of Debtor; the Prepetition Liens (i) constitute valid, binding, enforceable, and perfected first priority security interests and liens and (ii) are not subject to avoidance, reduction, disallowance, impairment, or subordination under the Bankruptcy Code or applicable nonbankruptcy law; and the Prepetition Indebtedness constitutes the legal, valid, and binding obligations of Debtor and is not subject to any objection, reduction, disallowance, impairment, recharacterization, or subordination under the Bankruptcy Code or applicable nonbankruptcy law. Debtor waives and releases any right it may have to challenge any of the Prepetition Indebtedness and the Loan Documents.

---

[1] As provided for in the Loan Documents, the Indebtedness shall also include fees expenses, costs, and other charges. As a result, the Outstanding Amount is subject to change.

F. <u>Necessity of Financing and Use of Cash Collateral</u>. Because Debtor has no unencumbered cash, Debtor's ability to finance its operations requires access to Lender's Cash Collateral, the absence of which would immediately and irreparably harm Debtor, the estate, and its creditors. Permitting Debtor to use Cash Collateral will allow Debtor to continue to operate its business and preserve its business relationships with vendors, suppliers, and customers and to satisfy other working capital and operational, financial, and general corporate needs. Permitting Debtor to use Cash Collateral will preserve the estate's going concern value, which will enable Debtor to maximize recoveries for all parties in interest.

G. <u>Property of the Estate</u>. Each item of Cash Collateral is property of Debtor's estate.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is granted as set forth in this Final Order. Any objections to the Motion that have not been withdrawn, waived, or settled are hereby denied and overruled. This Final Order shall become effective immediately upon its entry.

### **<u>AUTHORIZING USE OF CASH COLLATERAL</u>**

2. Debtor is authorized to use Cash Collateral until the Termination Date (defined below) solely to fund the types and corresponding amounts (subject to permitted variances) of itemized expenditures contained in the budget attached hereto as Exhibit "A" (the "***Budget***"). For each period set forth in the Budget (on a cumulative basis), Debtor's actual cash disbursements for such periods shall not exceed the total cumulative amount for such periods by more than 10%. Through the Termination Date, Lender and Debtor may, in their sole discretion, agree to increase cash disbursements in the Budget, and upon written agreement by Lender to modify the Budget, Debtor will be authorized to use Cash Collateral in such amount without further Court order or notice. Notwithstanding any term herein to the contrary, Debtor shall not use Cash Collateral to pay: (i) any expenses not expressly set forth in the Budget, whether such

items are similar to the expense categories in the Budget; or (ii) any obligations or debts arising before the Petition Date (unless otherwise ordered by the Court (the "***Prohibited Expenses***").

3. <u>Termination of Use of Cash Collateral.</u> Debtor's authority to use Cash Collateral, absent further Court order or Lender's written consent, shall automatically expire upon the earlier of: (i) the closing date of any sale of substantially all Debtor's assets under Section 363; (ii) the conversion of the case to Chapter 7 or dismissal of the case; (iii) Debtor's use of Cash Collateral for any Prohibited Expenses; (iv) the appointment of a trustee; (v) the effective date of any plan under Section 1129, (vi) Debtor's failure to comply strictly with the Approved Budget; or (vii) Debtor's failure to comply with any provision of this Final Order (the occurrence of any of the foregoing shall be an "***Event of Default.***") Debtor shall have three business days from its receipt of email notice of such Event of Default to Joe DePalma at JDePalmaSr@depalmahotels.com, with a copy to Debtor's counsel, to cure an Event of Default only under (vi) or (vii) in this Paragraph 3 (the "***Cure Period***"). Each Event of Default shall be known as the "***Termination Date***."

4. <u>Reporting Requirements.</u> Beginning on or before the fifteenth (15th) day of each month following the entry of this Final Order, Debtor shall provide Lender a written accounting showing (i) all Cash Collateral in its possession, custody, or control, including the sources thereof, (ii) any Cash Collateral expended and the purposes for which it was expended, (iii) a variance report showing actual revenue, expenditures and receipts for each line item against the line item set forth in the Budget, and (iv) further information that Lender reasonably requests upon reasonable notice which may include identifying, tracking, and accounting for the proceeds of any Cash Collateral created after the Petition Date, which shall also be subject to the Replacement Lien (defined herein).

5.  Debtor shall not (i) compromise, adjust, or modify the amount of any of Debtor's accounts receivable in an amount in excess of $10,000 (by way of discount, offset, or otherwise) or (ii) sell any item of Cash Collateral outside the ordinary course of business or ordinary business terms without Lender's written consent or Court approval issued after notice to Lender and an opportunity for a hearing.

## INVESTIGATION RIGHTS

6.  Debtor's stipulations contained in Paragraph E shall be without prejudice to the right of a Committee or party in interest (with requisite standing) to seek to disallow Lender's Prepetition Liens in the Collateral or Cash Collateral. Such parties shall have until June 14, 2010 at 4:00 p.m. (EST) (the "***Challenge Period***") to commence the appropriate action regarding Lender's Prepetition Liens, the Loan Documents or any other claims as to Lender. If no such action is timely filed, (i) Debtor's stipulations in Paragraph E hereof shall become final and binding on all parties in interest (including the Committee and UST) and (ii) Lender's Prepetition Liens in the Collateral and Cash Collateral shall be valid, perfected, nonavoidable, and in full force and effect, not subject to any claims, counterclaims, setoffs, or defenses.

## INSURANCE ADVANCE

7.  Within the later of three (3) days of the entry of this Order or the issuance of a policy acceptable to Lender, the Lender shall advance directly to the insurer the amount necessary to pay the premium and related fees associated with the Debtor's insurance renewal (the "***Insurance Advance***") from the monies the Debtor previously paid to Lender and presently held by Lender in "reserve" for payment of such purposes (the "***Insurance Reserve***"). Nothing herein shall be interpreted to impair or retain the Debtor's right to seek recovery of any amounts held by Lender in "reserve" or the Lender's right to challenge Debtor's attempt to recover such amounts.

## ADEQUATE PROTECTION

8.      Adequate Protection Payments: As adequate protection for Debtor's continued use of Cash Collateral expended pursuant to the Interim Order and this Final Order, Debtor shall (i) pay to Midland Loan Services, Inc ("**Midland**") funds equal to the amount of the tax refund from Denton County Tax Assessor's office (the "**Projected Tax Refund**") within three (3) business days of Debtor's receipt of the Projected Tax Refund and (ii) beginning on or before the twentieth (20th) day of each month following the entry of this Final Order, make the following payments to Lender from the actual funds remaining at the end of the prior month following payment of the actual budgeted expenses paid by the Debtor (such projected amount, other than the first month ending prior to the issuance of this Final Order, is shown as "Net Income" on the Budget, but such actual amount may vary from the projection) (the "**Excess Cash Flow**"); recognizing, however, that in determining the Excess Cash Flow for the first month following the entry of this Final Order, the determination shall take into account all funds in the Debtor's possession (including any and all funds generated or received by the Debtor the from the Petition Date) and the actual budgeted expenses paid by the Debtor since the Petition Date:

(a)     Debtor shall pay 100% of Excess Cash Flow to Lender, in each month that there is Excess Cash Flow, until Lender shall have been reimbursed the Insurance Advance (the "***Insurance Reimbursement***").  The Lender shall place Insurance Reimbursement in the Insurance Reserve;

(b)     following final repayment of the Insurance Advance, Debtor shall pay Lender 50% of the prior month's Excess Cash Flow (the "***Excess Cash Payment***");

(c)     after payment of the amounts in paragraph 7(b), Debtor shall segregate and account for the remaining 50% of the Excess Cash Flow and shall only be allowed to use

such funds to satisfy expenses set forth in the Budget.

9. <u>Replacement Lien</u>. As additional adequate protection for Cash Collateral expended by the Debtors in accordance with the Interim Order and this Final Order, Lender is hereby granted, pursuant to Section 361(1) and 363(e), a postpetition lien (the "***Replacement Lien***") in all postpetition Collateral to secure an amount of Lender's prepetition claims equal to the aggregate diminution in the value of Collateral resulting from Debtor's use of the Cash Collateral (whether such diminution is a result of, arises from, or is attributable to, the imposition of the automatic stay, any priming of Prepetition Liens, use or disposition of Cash Collateral, or physical deterioration, consumption, use, shrinkage, disposition, or decline in market value or otherwise) provided, however, that the Replacement Lien shall not attach to claims or causes of action that arise solely under Chapter 5 of the Bankruptcy Code. The Replacement Lien shall be subject only to valid, enforceable, and perfected liens and security interests in Debtor's assets, as prepetition debtors, which existed on the Petition Date, are not subject to avoidance under the Bankruptcy Code, and which are superior in priority to the Prepetition Liens. The Replacement Lien shall attach to all Debtor's property and assets, of any kind or nature whatsoever, whether now owned or hereafter acquired by the Debtor, and all proceeds, rents, or profits thereof, which were either subject to Prepetition Liens or acquired because of Debtor's use and/or expenditure of Cash Collateral. The Replacement Lien hereunder shall at all times be senior to Debtor's rights and any estate representative or any subsequent cases or proceedings under the Bankruptcy Code. Any security interest or lien upon the Collateral or Cash Collateral that is avoided or otherwise preserved for the benefit of Debtor's estate under Section 551 or any other provision of the Bankruptcy Code shall be subordinate to the Replacement Lien in such asset. Nothing herein shall be deemed to expand the scope of the Lender's liens to items that would not have

10. The Replacement Lien granted to Lender by this Final Order shall be perfected by operation of law upon execution and entry of this Final Order by the Court. Lender shall not be required to take any action to validate or perfect such Replacement Lien. Notwithstanding the foregoing, if Lender chooses to file such documents, all such filings and recordations shall be deemed to have been filed or recorded as of the Petition Date.

11. <u>507(b) Superpriority Lien</u>. To the extent the adequate protection provided herein proves to be inadequate to protect Lender's interest in the Collateral and the Cash Collateral, Lender shall have a priority claim to the fullest extent permitted under Section 507(b) equal to the aggregate diminution in the value of the Collateral resulting from Debtor's use of the Cash Collateral during the term of the Interim Order or this Final Order(the "***Superpriority Claim***"), and such claim shall have priority over, and be senior to, all other administrative claims. The Superpriority Claim granted in this Interim Order shall also be senior in priority to any superpriority lien created by debtor in possession financing.

12. The allocation of any and all payments made by the Debtor to Lender in accordance with this Final Order, including those payments made to Lender in respect of the Projected Tax Refund and the Insurance Reimbursement, is hereby expressly preserved.

**REMEDIES**

13. Notwithstanding the automatic stay in Section 362 and without the necessity of any further order of the Court, subject to the cure rights in Paragraph 3 above, if an Event of Default occurs, then at all times thereafter, Lender may, by written notice to Debtor: (i) terminate Lender's agreement to allow Debtor to use all or any portion of Cash Collateral; (b) declare the Prepetition Indebtedness to be immediately due and payable; and (c) take any action and exercise any rights and remedies allowed under the Loan Documents. Notwithstanding the foregoing,

Lender shall not consummate foreclosure on Cash Collateral or otherwise seize control of any Collateral or assets subject to the Replacement Lien absent five business days' prior written notice of an Event of Default to Debtor, counsel to Debtor, counsel to any Committee, and the UST.

### **MISCELLANEOUS PROVISIONS**

14. Debtor and Lender may amend or waive any provision of this Final Order if such amendment or waiver, in Debtor's and Lender's judgment together, is immaterial and nonprejudicial to the rights of third parties. Except as otherwise provided herein, no waiver, modification, or amendment of any provision hereof shall be effective unless set forth in writing, signed by Debtor and Lender, and approved by the Court.

15. Nothing in this Final Order shall be interpreted to mean that the Lender does or does not have any equity in the Collateral over and above the amount of the Prepetition Debt.

16. <u>Credit Bidding.</u> To the extent allowed by the Bankruptcy Code, any plan or motion seeking to sell substantially all the Collateral shall provide for and allow credit bidding by Lender, whether under: (a) Section 363(k) or in the case of a sale under Section 363(b) or (b) a plan provision consistent with the language of Section 363(k), including, without limitation, Section 1129(b)(2)(a)(iii).

17. <u>Section 506 Waiver; Marshalling and Equities of the Case Waiver.</u> Unless the Committee or any party in interest (with requisite standing) commences the appropriate action before the Challenge Period expires, Debtor and its successors and assigns, including estate professionals, shall waive application of Section 506(c), and no costs or expenses of administration or other charge, lien, assessment, or claim incurred between the Petition Date and the Termination Date shall be imposed against Lender, its claims, or its Collateral under Section 506(c) or otherwise, unless, before incurring such costs or expenses: (i) the party proposing to

incur such costs or expense shall obtain Lender's prior written consent; or (ii) this Court enters an order allowing such charge under Section 506(c). The "equities of the case" exception in Section 552(b) shall be deemed waived. Moreover, Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine regarding the Collateral.

18. <u>No Waiver; Survival.</u> This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that Lender may have to bring or to be heard on any matter brought before this Court. Other than any term requiring the Debtor to make any payment, the terms of this Final Order and any actions pursuant hereto, including, without limitation, the adequate protection granted hereby, shall survive the entry of any order: (i) confirming a plan of reorganization; (ii) dismissing this case; (iii) approving any sale under Section 363; (iv) converting this case to Chapter 7 of the Bankruptcy Code; (v) withdrawing the reference of this case; and (vi) abstention from handling or retaining jurisdiction over this case.

19. Other than as provided for herein, Lender agrees that it will not file any pleading taking any adverse action against the Debtor, including, filing a motion seeking relief from the stay or a motion to dismiss prior to the thirtieth (30th) day following entry of this Final Order.

20. Debtor shall, on or before 5 days after the entry of this Final Order, serve, by U.S. mail, copies of this Final Order to: (i) parties who received notice of the Interim Hearing; (ii) parties that have filed a request for special notice with this Court; (iii) counsel to Lender; (iv) counsel for any Committee; (v) all creditors who have recorded a financing statement on Debtor's personal property or a lien on any of Debtor's property; (vi) all parties required to be served under Bankruptcy Rule 1007(d); and (vii) the UST. Debtor shall also serve notice of the provisions of Paragraphs 6 and 13 of this Final Order to all creditors and parties in interest.

21. This Final Order constitutes findings of fact and conclusions of law and shall take

effect and be fully enforceable *nunc pro tunc* to the Petition Date upon the entry thereof.

22. To the extent any provision of this Final Order conflicts with the Motion, the Final Order controls.

Signed on 5/7/2010

*Brenda T. Rhoades*　　SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

**APPROVED AS TO FORM:**

| | |
|---|---|
| **HIERSCHE, HAYWARD, DRAKELEY & URBACH, P.C.** | **ALSTON & BIRD, LLP** |
| By: */s/ Russell W. Mills* <br> Russell W. Mills, SBN 00784609 <br> Jason M. Katz, SBN 24038990 | By: */s/ Jason H. Watson* <br> Jason H. Watson, (admitted pro hac vice) |
| 15303 Dallas Parkway, Suite 700 <br> Addison, Texas 75001 <br> Phone: (972) 701-7000 <br> Fax:    (972) 701-8765 | One Atlantic Center <br> 1201 West Peachtree Street <br> Atlanta, Georgia  30309-3424 <br><br> Phone: (404) 881-7000 <br> Fax:    (404) 881-7777 |
| **ATTORNEYS FOR DEBTOR AND DEBTOR-IN-POSSESSION** | **ATTORNEYS FOR MORGAN STANLEY MORTAGE CAPITAL HOLDINGS, LLC** |

# Holiday Inn Denton
## Financial Budget (April 29, 2010 - Oct 31, 2010)

| ACCOUNT NAME | Apr29-May Bdgt | Jun Bdgt | Jul Bdgt | Aug Bdgt | Sep Bdgt | Oct Bdgt | Total Bdgt |
|---|---|---|---|---|---|---|---|
| Rooms Available | 4896 | 4590 | 4743 | 4743 | 4590 | 4743 | 28305 |
| Rooms Occupied | 2348 | 2273 | 2630 | 3044 | 2833 | 2573 | 15701 |
| Average Rate | $95.00 | $94.00 | $94.00 | $92.00 | $95.00 | $93.00 | $93.78 |
| Occupancy % | 47.96% | 49.52% | 55.45% | 64.18% | 61.72% | 54.25% | 55.47% |
| | | | | | | | |
| **Rooms Revenue** | $223,060 | $213,662 | $247,220 | $280,048 | $269,135 | $239,289 | $1,472,414 |
| Salaries & Wages | 25828 | 25003 | 28930 | 33484 | 31163 | 28303 | $172,711 |
| Salaries & Wages POR | $11.00 | $11.00 | $11.00 | $11.00 | $11.00 | $11.00 | $11.00 |
| Tax, Ben. Other | 5708 | 5526 | 6394 | 7400 | 6887 | 6255 | $38,169 |
| Tax, Ben. Other POR | $2.43 | $2.43 | $2.43 | $2.43 | $2.43 | $2.43 | $2.43 |
| Other Expenses | 14940 | 14479 | 16675 | 19221 | 17923 | 16324 | $99,561 |
| Other Expenses POR | $6.36 | $6.37 | $6.34 | $6.31 | $6.33 | $6.34 | $6.34 |
| Department Profit | $176,584 | $168,654 | $195,222 | $219,943 | $213,162 | $188,407 | $1,161,973 |
| Dept. Profit POR | $75.21 | $74.20 | $74.23 | $72.25 | $75.24 | $73.22 | $74.01 |
| | | | | | | | |
| Restaurant Revenues | $14,088 | $13,638 | $15,780 | $18,264 | $16,998 | $15,438 | $94,206 |
| Banquet Food Revenue | $24,000 | $12,000 | $14,000 | $12,000 | $22,000 | $15,000 | $99,000 |
| Total Food Revenues | $38,088 | $25,638 | $29,780 | $30,264 | $38,998 | $30,438 | 193,206 |
| Other F&B Revenue | $4,200 | $2,000 | $2,250 | $2,000 | $3,000 | $2,500 | $15,950 |
| **Net Food Revenue** | $42,288 | $27,638 | $32,030 | $32,264 | $41,998 | $32,938 | 209,156 |
| Net Food Rev POR | $18.01 | $12.16 | $12.18 | $10.60 | $14.82 | $12.80 | $13.32 |
| Total Covers | | | | | | | 0 |
| Covers POR | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Food Cost | $12,569 | $8,461 | $9,827 | $9,987 | $12,869 | $10,045 | $63,758 |
| Sundry Cost | | | | | | | 0 |
| Salaries & Wages | $15,501 | $10,023 | $11,648 | $11,642 | $15,749 | $11,966 | $76,530 |
| Tax, Ben. Other | $4,077 | $2,636 | $3,063 | $3,062 | $4,142 | $3,147 | $20,127 |
| Other Expenses | $4,039 | $2,639 | $3,059 | $3,081 | $4,011 | $3,146 | $19,974 |
| Department Profit | $6,103 | $3,879 | $4,432 | $4,491 | $5,226 | $4,635 | 28,767 |
| Restaurant Beverage | | | | | | | $0 |
| Lounge Beverage | $7,044 | $6,819 | $7,890 | $9,132 | $8,499 | $7,719 | $47,103 |
| Banquet Beverage | $2,000 | $1,000 | $1,250 | $1,000 | $3,000 | $1,250 | $9,500 |
| **Total Revenues** | $2,000 | $1,000 | $1,250 | $1,000 | $3,000 | $1,250 | $9,500 |
| Beverage Rev POR | $0.85 | $0.44 | $0.48 | $0.33 | $1.06 | $0.49 | $1 |
| Beverage Cost | $480 | $240 | $300 | $240 | $720 | $300 | $2,280 |
| Salaries & Wages | $378 | $189 | $236 | $189 | $567 | $236 | $1,796 |
| Tax, Ben. Other | $99 | $50 | $62 | $50 | $149 | $62 | $472 |
| Other Expenses | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Department Profit | $1,043 | $521 | $652 | $521 | $1,564 | $652 | $4,952 |
| | | | | | | | |
| Telephone Revenues | $265 | $257 | $297 | $344 | $320 | $291 | $1,774 |
| Phone Rev. POR | $0.11 | $0.11 | $0.11 | $0.11 | $0.11 | $0.11 | $0.11 |
| Telephone Cost | $1,673 | $1,673 | $1,673 | $1,673 | $1,673 | $1,673 | $10,038 |
| Salaries & Wages | | | | | | | 0 |
| Tax, Ben. Other | | | | | | | 0 |
| Other Expenses | | | | | | | 0 |
| Department Profit | -$1,408 | -$1,416 | -$1,376 | -$1,329 | -$1,353 | -$1,382 | -8,264 |
| | | | | | | | |
| Other Income/Tax Return | $77,870 | $5,683 | $6,575 | $7,610 | $7,083 | $6,433 | $111,253 |
| Other Cost | $2,348 | $2,273 | $2,630 | $3,044 | $2,833 | $2,573 | $15,701 |
| Department Profit | $75,522 | $3,410 | $3,945 | $4,566 | $4,250 | $3,860 | 95,552 |



EXHIBIT A

| Month of: | Apr29-May Bdgt | Jun Bdgt | Jul Bdgt | Aug Bdgt | Sep Bdgt | Oct Bdgt | Total Bdgt |
|---|---|---|---|---|---|---|---|
| NET REVENUES | $345,483 | $248,239 | $287,372 | $321,266 | $321,536 | $280,200 | $1,804,097 |
| TOTAL EXPENSES | $87,640 | $73,192 | $84,497 | $93,073 | $98,687 | $84,029 | $521,117 |
| GROSS OPER. INCOME | $257,844 | $175,048 | $202,875 | $228,193 | $222,849 | $196,171 | $1,282,979 |
| A&G Salaries & Wages | $12,475 | $12,475 | $12,475 | $12,475 | $12,475 | $12,475 | $74,850 |
| A&G Tax, Ben. & Other | $3,368 | $3,368 | $3,368 | $3,368 | $3,368 | $3,368 | $20,210 |
| A&G Other Expenses | $13,866 | $12,586 | $14,570 | $16,288 | $16,302 | $14,206 | $87,817 |
| Department Total | $29,709 | $28,429 | $30,413 | $32,131 | $32,145 | $30,049 | $182,877 |
| A&BP Salaries & Wages | $8,445 | $8,445 | $8,445 | $8,445 | $8,445 | $8,445 | $50,670 |
| A&BP Tax, Ben. & Other | $2,086 | $2,086 | $2,086 | $2,086 | $2,086 | $2,086 | $12,515 |
| A&BP Other Expenses | $9,517 | $8,639 | $10,001 | $11,180 | $11,189 | $9,751 | $60,277 |
| Department Total | $20,048 | $19,170 | $20,531 | $21,711 | $21,720 | $20,282 | $123,462 |
| Total Energy | $11,153 | $10,797 | $12,493 | $14,459 | $13,457 | $12,222 | $74,580 |
| Total Energy PAR | $2.28 | $2.35 | $2.63 | $3.05 | $2.93 | $2.58 | $2.63 |
| Total Energy POR | $4.75 | $4.75 | $4.75 | $4.75 | $4.75 | $4.75 | $4.75 |
| M&R Salaries & Wages | $7,894 | $7,894 | $7,894 | $7,894 | $7,894 | $7,894 | $47,364 |
| M&R Tax, Ben. & Other | $2,005 | $2,005 | $2,005 | $2,005 | $2,005 | $2,005 | $12,030 |
| M&R Other Expenses | $9,138 | $8,479 | $7,500 | $8,385 | $8,392 | $7,313 | $49,208 |
| Department Total | $19,037 | $18,378 | $17,399 | $18,284 | $18,291 | $17,212 | $108,602 |
| Franchise Fees | $20,298 | $19,443 | $22,497 | $25,484 | $24,491 | $21,775 | $133,990 |
| Management Fees | $8,204 | $7,447 | $8,621 | $9,638 | $9,646 | $8,406 | $51,963 |
| **Total Gen. & Unapp** | $108,450 | $103,664 | $111,955 | $121,708 | $119,751 | $109,947 | $675,474 |
| Gross Oper. Profit | $149,394 | $71,384 | $90,920 | $106,485 | $103,098 | $86,224 | $607,506 |
| GOP POR | $63.63 | $31.41 | $34.57 | $34.98 | $36.39 | $33.51 | $38.69 |
| Capital Leases | $4,497 | $4,497 | $4,497 | $4,497 | $4,497 | $4,497 | $26,982 |
| RE Tax Reimbursement | $72,000 | $0 | $0 | $0 | $0 | $0 | $72,000 |
| Insurance | 0* | 0* | 0* | $0 | $0 | $0 | $0 |
| FF&E | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Asset Mgmt Fees | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $36,000 |
| Attorney Fees | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $60,000 |
| Professional Fees (CPA) | $12,500 | $0 | $0 | $0 | $0 | $0 | $12,500 |
| Net Income | $44,397 | $50,887 | $70,423 | $85,988 | $82,601 | $65,727 | $400,024 |

*Footnote - Insurance expense for May, June and July will be such amounts available to reimburse Morgan Stanley for advancing funds to satisfy the Insurance Reimbursement (as defined in the Final Order)