UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DENTON LONE OAK HOLDINGS, L.P., | ) | Case No. 10-40836 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, | ) ) | CONTESTED MATTER |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DENTON LONE OAK HOLDINGS, L.P., | ) | |
| | ) | |
| Respondent. | ) | |

**NEGATIVE NOTICE PURSUANT TO LOCAL BANKRUPTCY RULE 4001**

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTIONS. IF NO OBJECTION IS TIMELY FILED AND SERVED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)(2)**

Morgan Stanley Mortgage Capital Holdings LLC ("**Morgan Stanley**") files this *Motion for Relief from Automatic Stay Under 11 U.S.C § 362(d)(2)* (the "**Motion**"), and in support thereof, Morgan Stanley respectfully shows the Court as follows:

## I. PRELIMINARY STATEMENT

1. This Court should grant Morgan Stanley relief from the automatic stay under Section 362(d)(2) of Title 11 of the United States Code (the "**Bankruptcy Code**") to pursue its state law remedies against its Collateral[1] because Denton Lone Oak Holdings, L.P. (the "**Debtor**") (i) lacks equity in the Property and (ii) cannot carry its burden to prove to this Court that a successful and effective reorganization is reasonably in prospect. At bottom, this case is nothing more than a two-party dispute between Morgan Stanley, the secured lender that has repeatedly worked with the Debtor in the past to facilitate its continued operations, and the Debtor, an entity with a long history of defaults, unsubstantiated and speculative hopes for its future, and a simple inability to avail itself of the Chapter 11 reorganization process. The Fifth Circuit Court of Appeals in *Timbers* noted that the vast majority of Chapter 11 cases do not end with confirmed plans of reorganization. *See Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 373 n.17 (5th Cir. 1987). In acknowledging this fact, the Fifth Circuit stated that the challenge to bankruptcy courts is therefore to recognize those cases that are doomed to fail as promptly as possible and limit the administrative expense and costs borne by creditors. *Id.* Because this case presents the precise concerns the Fifth Circuit spoke about in *Timbers*, this Court should grant Morgan Stanley relief from the automatic stay under Section 362(d)(2) in order to allow Morgan Stanley to pursue its state law remedies against its Collateral.

## II. FACTUAL BACKGROUND

2. On March 15, 2010 (the "**Petition Date**"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and property as a debtor in possession under Sections 1107 and 1108 of the Bankruptcy Code.

---

[1] Capitalized terms not otherwise defined in the Preliminary Statement are defined below.

3. The Debtor owns real property and improvements, including a 153-room, four story hotel known as the Denton Holiday Inn & Suites, which was built in 2007 (the "**Hotel**") and which is located on a 6.1-acre site in Denton County, Texas (the "**Property**").

A. **Prepetition Financing and Other Financial Accommodations.**

4. In 2007, Morgan Stanley made a mortgage loan to the Debtor evidenced by, among other things, a Promissory Note, dated June 30, 2007, in the original principal amount of $12,850,000.00 (the "**Original Note**").

5. Morgan Stanley secured the Original Note by, among other things, (i) a Deed of Trust and Security Agreement, dated June 30, 2007, which was recorded as Instrument No. 2007-90723, Denton County, Texas (the "**Security Instrument**")[2] and (ii) an absolute Assignment of Leases and Rents, which was recorded as Instrument No. 2007-90724, Denton County, Texas (the "**ALR**").[3]

6. In the Security Instrument and ALR, the Debtor granted Morgan Stanley first priority liens and security interests on and in substantially all the Debtor's real and personal property (the "**Collateral**"), including the Debtor's cash and cash equivalents from the Hotel's operation (the "**Cash Collateral**").

7. In 2008, the Debtor defaulted on its payment obligations to Morgan Stanley. After receiving proper notice of the payment default from Morgan Stanley, the Debtor failed to cure its default. Accordingly, Morgan Stanley exercised its right to accelerate the entire principal outstanding balance under the Original Note and demanded payment in full.

---

[2]   A copy of the Security Instrument is attached hereto as Exhibit A.

[3]   A copy of the ALR is attached hereto as Exhibit B.

### B. First Loan Modification.

8. On June 2, 2008, the Debtor requested that Morgan Stanley reinstate the loan. As a condition to reinstating the loan, the Debtor executed an Amended and Restated Promissory Note in the principal amount of $12,036,938.10, with an effective date of May 8, 2008 (the "**Amended Note**").[4]

9. Contemporaneously with the Amended Note, the Debtor and Morgan Stanley entered into a Loan Reinstatement and Modification Agreement, dated June 2, 2008 (the "**First Modification Agreement**").[5]

10. Section 3(b) of the First Modification Agreement and Article XI of the Amended Note clarify that, unlike the Original Note, the Amended Note is a full recourse obligation of the Debtor.

11. The Amended Note provided for monthly "interest only" payments, commencing June 15, 2008 and ending December 9, 2008, at which time the Debtor was required to pay "the balance of the principal sum and all interest accrued thereon and all other amounts due." Amended Note, Article I, §§ (b)-(c).

12. On November 10, 2008, the Debtor extended the maturity date to June 9, 2009, pursuant to Article XVIII of the Amended Note.

### C. Second Loan Modification Agreement.

13. In early 2009, the Debtor again defaulted on its payment obligations to Morgan Stanley by failing to make monthly interest only payments provided for under the Amended Note and First Modification Agreement. After receiving proper notice of the payment default from

---

[4] A copy of the Amended Note is attached hereto as Exhibit C.

[5] A copy of the First Modification Agreement is attached hereto as Exhibit D.

Morgan Stanley, the Debtor failed to cure its default. Accordingly, Morgan Stanley again exercised its right to accelerate the entire principal outstanding balance under the Amended Note and demanded payment in full.

14. Thereafter, on June 10, 2009, the Debtor and Morgan Stanley reached an agreement to reinstate the loan. The Debtor and Morgan Stanley then entered into the Second Loan Reinstatement and Modification Agreement, dated July 10, 2009 (the "**Second Modification Agreement**,"[6] and together with the Original Note, Security Instrument, ALR, Amended Note, and the First Modification Agreement, collectively, the "**Loan Documents**").

### D. The March 2010 Monetary Default.

15. In March 2010, before the Petition Date, the Debtor suffered a monetary default under the Amended Note and Second Modification Agreement by, among other things, failing to repay Morgan Stanley for over $100,000.00 in advances Morgan Stanley made on the Debtor's behalf.

16. Consequently, as of the Petition Date, the amount due and owing to Morgan Stanley was $11,766,131.54 (the "**Indebtedness**").[7] *See* Docket No. 64, Agreed Final Order Authorizing Debtor's Use of Cash Collateral (the "**Final Cash Collateral Order**").

### E. Value of the Property.

17. In its schedules, the Debtor stated that the current value of the Property is "unknown." *See* Docket No. 34, Schedule A.

---

[6] A copy of the Second Modification Agreement is attached hereto as Exhibit E.

[7] As provided for in the Loan Documents, the Indebtedness includes all unpaid fees, expenses, costs, and other charges incurred by Morgan Stanley in connection with the Loan Documents and all unpaid interest payments. As such, the Indebtedness is subject to increase.

5

18. After the Petition Date, however, Morgan Stanley requested from CB Richard Ellis ("**CBRE**") a current appraisal (the "**Appraisal**")[8] of the Debtor's fee simple interest in the Property to determine the value of its Collateral.

19. On April 16, 2010, CBRE issued its Appraisal, concluding that as of April 9, 2010, the "as is" value of the Property was $9,100,000.00.

20. Thus, the Property's value is less than the Indebtedness, leaving the Debtor with no equity in the Property.

### III. ARGUMENT AND CITATION OF AUTHORITY

**A. This Court Should Grant Morgan Stanley Relief from the Automatic Stay Because the Debtor Lacks Equity in the Property and the Property is Not Necessary to an Effective Reorganization.**

21. This Court should grant Morgan Stanley relief the automatic stay to allow it to pursue its state law remedies against its Collateral because the Debtor has no equity in the Property and the Property is unnecessary to an effective reorganization. Section 362(d)(2) of the Bankruptcy Code provides secured creditors relief from the automatic stay when (1) there is no equity in the collateral and (2) such collateral "is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2)(A)-(B); *Nw. Timberline Enters., Inc.*, 348 B.R. 412, 429 (Bankr. N.D. Tex. 2006). Although the secured creditor has the burden to establish that the debtor lacks equity in the property, the debtor has the burden of proof on all other issues, including the burden to show a "reasonable possibility of a successful reorganization within a reasonable time." 11 U.S.C. § 362(g); *Nw. Timberline Enters.*, 348 B.R. 430.

**1. The Debtor Has No Equity in the Property.**

22. The Debtor lacks equity in the Property. A debtor has no equity in property for purposes of Section 362(d)(2) when the debts secured by the liens on the property exceed the

---

[8] A copy of the Appraisal is attached hereto as Exhibit F.

property's value. *E.g. Sutton v. Bank One Tex. Nat'l Ass'n (In re Sutton)*, 904 F.2d 327, 329 (5th Cir. 1990) (stating that "'[e]quity' as used in section 362(d) portends the difference between the value of the subject property and the encumbrances against it."); *see also Riggs Nat'l Bank v. Perry (In re Perry)*, 729 F.2d 982, 985 (4th Cir. 1984). In its schedules, the Debtor stated that the current value of the Property is "unknown." *See* Docket No. 34, Schedule A. According to CBRE's Appraisal, however, the current "as is" value of the Property is $9,100,000.00. This value is substantially less than the approximately $11,766,131.54 due and owing to Morgan Stanley as of the Petition Date, which leaves Morgan Stanley with an unsecured deficiency claim of $2,666,131.54. *See* 11 U.S.C. § 506(a)(1). Consequently, the Debtor lacks equity in the Property, and therefore, Morgan Stanley has satisfied the first element under Section 362(d)(2)(A).

### 2. An Effective Reorganization Is Not Reasonably In Prospect.

23. Because the Debtor lacks equity in the Property, the Debtor can only prevent relief from the automatic stay if the Debtor can "show that the Property is needed for an "*effective* reorganization.'" 11 U.S.C. § 362(g) (emphasis added). To make such a showing, the Supreme Court has stated that

> [w]hat this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means . . . that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*United Savings Assoc. v. Timbers of Inwood Forest*, 484 U.S. 365, 375-76 (1988); *accord In re Sutton*, 904 F.2d at 330. In *Timbers*, the Supreme Court established a two-part test, first determining if there has been a showing of a reasonable possibility of a successful

7

reorganization, and second, whether that showing has come within a reasonable time. 484 U.S. at 375-76.

24. "The definition of 'effective reorganization' articulated by the Supreme Court in *Timbers* necessarily implicates, to a degree, consideration of the plan confirmation standards under 11 U.S.C. § 1129." *In re 499 Warren St. Assocs. Ltd. P'Ship*, 151 B.R. 307, 310 (Bankr. N.D.N.Y. 1992); *accord In re Anderson Oaks Ltd. P'ship*, 77 B.R. 108, 111-13 (Bankr. W.D. Tex. 1987); *Nw. Timberline Enters.*, 348 B.R. at 435-36. Indeed, as one bankruptcy court has aptly stated:

> To be "effective," a plan must be confirmable. To be confirmable, specific requirements must be met. . . . As a result, in order to assess whether a debtor has met its burden under sections 362(d)(2) and 362(g), a bankruptcy court must weigh evidence presented against the standards imposed by section 1129 to determine whether the threshold requirements of that section can be met.

*In re Henrico Hotel Assocs., L.P.*, 1994 WL 16191612, at *4 (Bankr. E.D. Va. Mar. 31, 1994); *accord In re Shady Grove Tech Ctr. Assocs.*, 227 B.R. 422, 426 (Bankr. D. Md. 1998) (stating that "'[i]f the plan proposed cannot meet confirmation standards, it cannot form the basis for finding there to be a reasonable possibility of a successful reorganization.'"); *In re Swedeland Dev. Group, Inc.* 16 F.3d 552, 567 (3d Cir. 1994) (stating that from the requirement that reorganization be in prospect, "'[i]f no reorganization of the debtor is feasible, then no property of the debtor can be necessary for that end.'").

25. Although the Debtor bears the burden of proof and persuasion in proving it has a reasonable probability of successful reorganization within a reasonable time under Section 362(d)(2)(B), Morgan Stanley submits that the Debtor cannot shoulder that burden. *See Anderson Oaks*, 77 B.R. at 110 (stating that a "creditor may choose to put on evidence relating to the likelihood of an effective reorganization as well, but does not by doing so shoulder either the

burden of going forward with evidence or the burden of proof on that issue."). Here, the Property currently does not generate sufficient revenue (and has not generated sufficient revenue in the past) to enable the Debtor to satisfy debt service to Morgan Stanley under the Amended Note, let alone fund a plan of reorganization. With insufficient income-generating operations, the Debtor depends on the use of Morgan Stanley's Cash Collateral to continue the operation of its business. *See Affidavit of Joseph N. Depalma*, Docket No. 13, ¶ 8. Indeed, the Debtor holds no unencumbered interest or collateral that would enable it to obtain additional financing to fund the operation of its Hotel without using Morgan Stanley's Cash Collateral. *See id.* at ¶ 7. Because any plan of reorganization can only be funded by the Debtor's use of rents from the Hotel's operation, which constitute Morgan Stanley's Cash Collateral, and because Morgan Stanley will not consent to any plan, the Debtor cannot confirm a consensual plan of reorganization under Section 1129(a).

26. Therefore, the Debtor can only confirm a plan under the auspices of Section 1129(b)—generally referred to as the "cramdown" provision. To cramdown a plan under Section 1129(b), however, the Debtor must show, among other things, that there is at least one class of impaired creditors, not including insiders, who will vote to accept the plan. *See* 11 U.S.C. § 1129(a)(10); *Anderson Oaks*, 77 B.R. at 111-13; *Nw. Timberline Enters.*, 348 B.R. at 435-36. According to the Appraisal, the current "as is" value of the Property is $9,100,000.00, which would leave Morgan Stanley with an unsecured deficiency claim of $2,666,131.54. *See* 11 U.S.C. § 506(a)(1). Though the Debtor has some discretion to classify claims, that discretion is limited, and the Debtor cannot exercise its discretion in an attempt to gerrymander a class of impaired creditors that will vote for its plan. *See, e.g., Phoenix Mutual Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274 (5th Cir. 1991).

27. Any argument by the Debtor that it could separately classify Morgan Stanley's unsecured deficiency claim would conflict with well established Fifth Circuit precedent. *See id.* Indeed, any justification the Debtor might proffer for separate classification of Morgan Stanley's unsecured deficiency claim would be a pretext for gerrymandering an accepting class in a case that is nothing more than a two-party dispute. Courts in this circuit have held that "[t]wo party disputes such as this simply have no place in bankruptcy." *Anderson Oaks*, 77 B.R. at 112 (granting motion for relief from stay in favor of lender because the bankruptcy case only involved a dispute between the debtor who owned a two-phase apartment complex and its secured lender).

28. To be sure, no good business reason would support separate classification. First, the Debtor's market is highly competitive, not limited. Second, the Debtor could obtain substitute trade creditors; indeed, there is likely a surplus of trade creditors ready, willing, and able to service the Hotel. Finally, the Debtor has made absolutely no showing that its existing trade creditors (who are not critical to the Hotel's operation by virtue of the fact that there are substitute creditors available) would be unwilling to continue to service the Hotel absent some special treatment under the plan. *See Greystone III Joint Venture*, 995 F.2d at 1281 (considering all these factors). Accordingly, any proffer by the Debtor of a so-called "good business reason" is a red herring.

29. Consequently, to satisfy the proper classification standards under 11 U.S.C. § 1122, the Debtor must classify Morgan Stanley's unsecured deficiency claim in a class with the fifteen other unsecured creditors listed on the Debtor's schedules, whose claims total approximately $285,686.99. *See* Schedule F, Docket No. 34. With the addition of Morgan Stanley's $2,666,131.54 unsecured deficiency claim, Morgan Stanley would control 90% of the

only class of creditors that holds the potential affirmative vote to achieve a cramdown plan, thereby assuring that the Debtor could not obtain an affirmative vote by at least one impaired class of creditors. *See* 11 U.S.C. § 1126(c) (stating that a class accepts a plan if the holders of at least two-thirds in amount and more than half in number of the claims of such class accept the plan); *see also Nw. Timberline Enters.*, 348 B.R. at 436. In circumstances such as these, the *Anderson* Court appropriately noted, "If cramdown is not available, it is pointless to further consider a plan which requires cramdown for its success." *Anderson Oaks*, 77 B.R. at 113; *accord Nw. Timberline Enters.*, 348 B.R. at 436 (holding that because the debtor did not have a legitimate impaired accepting class of creditors, there was no reason to let the debtor proceed with its cramdown plan). In short, in this case, the Debtor's prospect of a successful reorganization is a mere financial pipe dream—a dream not countenanced under Fifth Circuit precedent. *See Anderson Oaks*, 77 B.R. at 110 (stating that "[a] reasonable probability cannot be grounded solely on speculation and the Debtor cannot meet its burden of proof through conjecture and speculation."). Because the Debtor cannot confirm any plan of reorganization over Morgan Stanley's objection, this Court should grant Morgan Stanley relief from the automatic stay under Section 362(d)(2).

WHEREFORE, Morgan Stanley respectfully requests that this Court enter an order granting Morgan Stanley (i) relief from the automatic stay under Section 362(d)(2) so that it can exercise its state law remedies with respect to its Collateral and (ii) such other and further relief as the Court deems just and proper.

Dated this 9th day of June, 2010.

**ALSTON & BIRD LLP**

*/s/ Joshua P. Martin*

Joshua P. Martin
Texas Bar No. 24037030
2200 Ross Avenue, Suite 3601
Dallas, Texas 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
josh.martin@alston.com

Jason H. Watson (admitted *pro hac vice*)
David A. Wender (admitted *pro hac vice*)
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
jason.watson@alston.com
david.wender@alston.com

*Counsel for Morgan Stanley Mortgage Capital Holdings LLC.*