# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-40836 |
| | § | |
| **DENTON LONE OAK HOLDINGS, L.P.,** | § | |
| **A/K/A HOLIDAY INN & SUITES DENTON** | § | |
| | § | **CHAPTER 11** |
| Debtor. | § | |

## DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION

Denton Lone Oak Holdings, L.P., a/k/a Holiday Inn & Suites Denton, Debtor herein (the "Debtor"), proposes the following First Amended Plan of Reorganization (the "Plan") pursuant to 11 U.S.C. § 1121(c):

## ARTICLE 1

## DEFINITIONS

1.1 <u>Defined Terms</u>.  In addition to such other terms as are defined in other Sections of this Plan, the following terms shall have the meanings set forth below (such meanings to be applicable equally to both the singular and plural, masculine and feminine forms of the terms defined).

1.2 "<u>Administrative Expense</u>" means any Allowed Claim constituting a cost or expense of administration of the Chapter 11 Case allowed under subsections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation to professionals or reimbursement of expenses of professionals to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code and any Allowed Claim against the Debtor arising after the Petition Date and prior to the Effective Date.  This shall include statutory fees owing to the Office of the United States Trustee.

1.3 "<u>Administrative Expense Creditor</u>" means any Person entitled to payment on account of an Administrative Expense.

1.4 "<u>Allowed</u>," when used with respect to a Claim or Current Partnership Interest, means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no objection was filed by the Objection Deadline, unless such Claim is the subject of a pending action in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by

Final Order of such other forum and allowed by Final Order of the Bankruptcy Court; or (ii) as to which an objection was filed by the Objection Deadline, to the extent allowed by a Final Order. "Allowed," when used with respect to an Administrative Expense of a Professional shall mean an Administrative Expense approved by application to the Bankruptcy Court and entry of an Order approving such Administrative Expense.

1.5 "Assets" means all of the right, title, and interest in and to property of whatsoever type or nature owned by the Debtor as of the Petition Date, together with assets subsequently acquired by the Debtor, and including, but not limited to, property defined in section 541 of the Bankruptcy Code (each identified item of property being herein sometimes referred to as an Asset), the available insurance or insurance policies, or any cause of action pursued, pursuable, or owned by Debtor including all Avoidance Actions and Litigation Claims.

1.6 "Avoidance Action" means a cause of action assertable by the Debtor against all Entities and brought under sections 541, 542, 543, 544, 545, 547, 548, 549, 550, 552, or 553 of the Bankruptcy Code.

1.7 "Ballot" means the form of ballot provided to holders of Claims or Current Partnership Interests pursuant to Bankruptcy Rule 3017(d), by which each holder may accept or reject the Plan and select any optional treatment for an Allowed Claim or Allowed Current Partnership Interest.

1.8 "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Texas, or such other court having jurisdiction over all or any part of the Chapter 11 Case.

1.9 "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified at title 11 of the United States Code, as applicable to this Chapter 11 Case.

1.10 "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to this Chapter 11 Case, including applicable Local Rules of the Bankruptcy Court.

1.11 "Business Day" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in New York, New York are authorized or obligated by law or executive order to close.

1.12 "Cash" means legal tender of the United States of America.

1.13 "Cash Management Agreement" means the Cash Management Agreement dated July 10, 2009 between Morgan Stanley and the Debtor.

1.14 "Chapter 11 Case" means the above captioned and numbered reorganization proceeding of the Debtor under Chapter 11 of the Bankruptcy Code.

1.15 "Claim" means: (a) a right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured (including potential and un-matured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured (including potential and un-matured tort and contract claims), disputed, undisputed, secured or unsecured.

1.16 "Claims Bar Date" means the date on which all Creditors, other than Creditors with Administrative Expense Claims as described in Article 4.1 of the Plan, must have filed a Proof of Claim with the Bankruptcy Court, as follows: for Creditors other than governmental units, August 5, 2010; for Creditors who are governmental units, one hundred eighty (180) days from the Petition Date.

1.17 "Claimant" means the holder of a Claim.

1.18 "Class" means a category or group of holders of Claims or Partnership Interests as designated in Article 2.0 of the Plan.

1.19 "Collateral" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim.

1.20 "Comptroller Claim" means all claims asserted by the Texas Comptroller Of Public Accounts that is either a Secured Claim or a Priority Claim.

1.21 "Confirmation Date" means the date of entry of the Confirmation Order.

1.22 "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as the same may be continued from time to time.

1.23 "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.24 "Contested," when used with respect to a Claim, means a Claim against the Debtor (a) that is listed in the Debtor's Schedules as disputed, contingent, or un-liquidated; (b) that is listed in the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; or (c) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

1.25    "Creditor" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

1.26    "Current Bank Note" means the Promissory Note in the principal amount of $12,850,000.00, and the Amended and Restated Promissory Note, dated June 2, 2008 (effective May 8, 2008), as amended and modified.

1.27    "Current Partnership Interests" means the partnership interests in the Debtor owned by the Current Partnership Owners on the Petition Date.

1.28    "Current Partnership Interest Owners" means LO Hospitality, LO GP and Rainier.

1.29    "Debtor" means Denton Lone Oak Holdings, L.P., a/k/a as Holiday Inn and Suites Denton, Federal ID No. 26-0563254.

1.30    "Disallowed," when used with respect to all or any part of a Claim or Current Partnership Interest, means that portion of a Claim or Current Partnership Interest to which an Objection or Motion to Disallow has been sustained by a Final Order.

1.31    "Disclosure Statement" means the written statement, as amended, supplemented, or modified from time to time, describing the Plan that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code and Bankruptcy Rule 3018.

1.32    "Effective Date" means the first Business Day after the Confirmation Date on which all conditions to the effectiveness of the Plan, as specified in Paragraph 12.1, have been satisfied or waived.

1.33    "Entity" means any corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity, and any Person.

1.34    Exhibits.  All exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

1.35    "FFE Reserve Account" means the account established pursuant to paragraph 2(vi) of the Cash Management Agreement.

1.36    "Final Order" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body as to which order or judgment the time to appeal or seek rehearing or petition for *certiorari* shall have expired or which order or judgment no longer shall be subject to appeal, rehearing, or *certiorari* proceeding and with respect to which no appeal, motion for rehearing, or *certiorari* proceeding or stay then shall be pending.

1.37    "Franchise Agreement" means the agreement between Holiday Hospitality Franchising, Inc. and Hall dated September 18, 2002, amended on August 2, 2007 to substitute Debtor as licensee.

1.38    "Gunter" means Glenn Gunter.

1.39    "Hall" means Gaylord Hall, the 100% owner of LO GP.

1.40    "Insurance Reserve Account" means the account established pursuant to paragraph 2(ii) of the Cash Management Agreement.

1.41    "IRS" means the Internal Revenue Service.

1.42    "Interest Reserve Account" means the account established pursuant to paragraph 2(iii) of the Cash Management Agreement.

1.43    Interpretation.    Unless otherwise specified, all section, article and exhibit references in this Plan are to the respective section in, article of, or exhibit to, the Plan as the same may be amended, waived, or modified from time to time.  The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof.

1.44    "Lacey" means Randy Lacey, an owner of Teasley Partners, Ltd. which owns a partial interest in LO Hospitality.

1.45    "Lien" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor contemplated by section 101(37) of the Bankruptcy Code.

1.46    "Litigation Claims" means all claims and causes of action of any kind owned by Debtor on the Effective Date other than Avoidance Actions regardless of whether any suits or other proceedings have been instituted on such claims and causes of action and regardless of whether same have been identified herein or in the Schedules, Statement of Affairs or Disclosure Statement.

1.47    "Loan Documents" means the Promissory Note, dated July 30, 2007, in the principal amount of $12,850,000.00, the Deed of Trust and Security Agreement dated July 30, 2007, the Assignment of Leases and Rents, dated July 30, 2007, the Amended and Restated Promissory Note, dated June 2, 2008 (effective May 8, 2008), the Loan Reinstatement and Modification Agreement, dated June 2, 2009 and the Second Loan Reinstatement and Modification Agreement, dated July 10, 2009, Cash Management Agreement dated July 10, 2009, Restricted Account Agreement dated July 10, 2009, and Subordination and Conditional Assignment of Management Agreement, dated July 10, 2009, and any other document related to any amount owing from the Debtor to Morgan Stanley.

1.48　"LO Hospitality" means Lone Oak Hospitality, Ltd., a limited partner of the Debtor and owner of 89% ownership interest in the Debtor.

1.49　"LO GP" means Denton Lone Oaks, G.P., L.L.C., the general partner of the Debtor and owner of a 1% ownership interest in the Debtor.

1.50　"Management Agreement" means the Management Agreement between Debtor and DePalma Hotel Corporation dated February 11, 2009.

1.51　"Morgan Stanley" means Morgan Stanley Mortgage Capital Holdings, LLC and its agents, affiliates and representatives and any predecessors or successors-in-interest.

1.52　"Morgan Stanley Claim" means the Allowed Claim held by Morgan Stanley.

1.53　"New Bank Note" means the note executed by Debtor in favor of Morgan Stanley in accordance with Section 5.1.

1.54　"New Partnership Interest Owner" means the owner of a New Partnership Interest.

1.55　"New Partnership Interest" means the partnership interests in the Reorganized Debtor that shall be issued to the New Partnership Interest Owner pursuant to section 7.5 of the Plan.

1.56　"Objection" means an objection to the allowance of a Claim or Current Partnership Interest interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court.

1.57　"Objection Deadline" means the date by which Objections to Claims must be filed, to be fixed in the manner prescribed under Section 9.1 of the Plan.

1.58　Other Terms. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

1.59　"Person" means any individual.

1.60　"Petition Date" means March 15, 2010.

1.61　"Plan" means this Chapter 11 Plan of Reorganization, either in its present form or as it may be altered, amended, or modified from time to time.

1.62    "Plan Documents" means the exhibits to the Plan that will be filed in the Bankruptcy Court at least ten (10) calendar days prior to the date fixed by order of the Bankruptcy Court for the commencement of the Confirmation Hearing, if any.

1.63    "Priority Claim" means an Allowed Claim other than a Claim for an Administrative Expense to the extent that it is entitled to priority in payment under section 507(a) of the Bankruptcy Code including, without limitation, Priority Employee Claims, Priority Tax Claims.

1.64    "Priority Employee Claim" means Allowed Priority Claims that are held by an employee of the Debtor to the extent that it is entitled to priority in payment under section 507(a)(3) of the Bankruptcy Code.

1.65    "Priority Tax Claim" means an Allowed Claim of a governmental unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code but not including Priority IRS Tax Claims and Comptroller Claims.

1.66    "Rainier" means Rainier Income and Growth Fund III, LLC, a limited partnership of the Debtor and owner of a 10% ownership interest in Debtor.

1.67    "Real Property" means the real property located at 1434 Centre Place Drive, Denton, Texas 76205.

1.68    "Reorganized Debtor" means the Debtor following confirmation of the Plan which shall have all of the rights, obligations and duties described in Sections 7.1 – 7.4 of the Plan.

1.69    "Reserves" means any and all monies received from the Debtor that are being held by Morgan Stanley for payment of future obligations including, without limitation, monies in a Specified Reserve Account.

1.70    "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been or may be amended subsequently.

1.71    "Secured Claim" shall mean:  (a) an Allowed Claim secured by a Lien on an Asset, which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and that is duly Allowed, but only to the extent that such Claim does not exceed the value of Assets that the Bankruptcy Court finds are valid security for such Claim; and (b) an Un-matured Secured Tax Claim.

1.72 "Secured Denton County/City Tax Claim" means the claim(s) held by Denton County, Texas and/or the City of Denton, Texas for pre-petition *ad valorem*, business personal property and/or occupational taxes.

1.73 "Specified Reserve Account" means the FFE Reserve Account, Insurance Reserve Account, Interest Reserve Account and Tax Reserve Account.

1.74 "Subordinated Insider Claims" means the Allowed Claim of any insider as defined in 11 USC § 101(31) including, without limitation, any Allowed Claim held by Hall, Lacey, Gunter, Mike Blackwell, the Current Partnership Interest Owners, Lone Oak Hospitality, LLC, Jacqueline Hall, Teasley Partners, Ltd., Rustown Homes, Inc., Waterford Investors, Ltd., Bunker Investments, Ltd., and/or Teasley Street, L.L.C.

1.75 "TFL" means Task Force Logistics, Ltd. and its agents, affiliates and representatives and any successors in interest.

1.76 "TFL Claim" means the claim asserted by TFL which shall be in the amount of $200,000.00 to the extent allowed by the Court.

1.77 "Tax Reserve Account" means the account established pursuant to paragraph 2(i) of the Cash Management Agreement.

1.78 "Unclaimed Property" means any Cash, distribution, or any other property of the Debtor unclaimed for a period of sixty (60) days after the Effective Date as set forth in Section 8.4 of the Plan.

1.79 "Un-matured Secured Tax Claim" means any Claim for pre-petition *ad valorem* and business personal property taxes that has not yet matured and excluding the Secured Denton County/City Tax Claim.

1.80 "Unsecured Claims" means all Allowed Claims other than the Morgan Stanley Claim, Priority Claims, Administrative Claims, Secured Denton County/City Tax Claims, Un-matured Secured Claims, Comptroller Claims, Current Partnership Interests, and Subordinated Insider Claims.

## ARTICLE 2

## CLASSIFICATION OF CLAIMS AND CURRENT PARTNERSHIP INTERESTS

2.1 The following is a designation of the Classes of Claims and Current Partnership Interests under this Plan. Administrative Expense Claims and Priority Tax Claims have not been classified and are excluded from the following classes in accordance with section 1123(a)(1) of the Bankruptcy Code. A Claim or Current Partnership Interest shall be deemed classified in a particular Class only to the extent that the Claim or Current Partnership Interest qualifies within the description of that Class. A Claim or Current Partnership Interest is in a particular Class only

to the extent that the Claim or Current Partnership Interest is an Allowed Claim or Current Partnership Interest in that Class.

2.2     Claims and Current Partnership Interests:

Class 1 – Morgan Stanley Claim

Class 2 – Secured Denton County/City Tax Claim

Class 3 – Priority Employee Claims

Class 4 – Comptroller Claims

Class 5 – Unsecured Claims

Class 6 – Subordinated Insider Claims

Class 7 – Current Partnership Interests

## ARTICLE 3

## IDENTIFICATION OF IMPAIRED CLASSES OF
## CLAIMS AND CURRENT PARTNERSHIP INTERESTS

3.1     <u>Impaired Classes of Claims and Current Partnership Interests</u>.  Classes 2, 3, 4 and 7 are not impaired under the Plan.  Classes 1, 5 and 6 are impaired under the Plan.

3.2     <u>Impairment Controversies</u>.  If a controversy asserted in an objection to confirmation or other written pleading arises as to whether any Class of Claims or Current Partnership Interest is impaired under the Plan, the Bankruptcy Court shall determine such controversy after notice and a hearing and, if no such pleading is filed, then the identity of any impaired class will be conclusively determined by Section 3.1 of the Plan.

## ARTICLE 4

## TREATMENT OF ADMINISTRATIVE
## EXPENSES AND PRIORITY TAX CLAIMS

4.1     <u>Administrative Expenses</u>.  All Administrative Expenses against the Debtor shall be treated as follows:

(1)     Administrative Expenses Bar Date.  The holder of any Administrative Expense other than: (i) a claim for professional fees and expenses for services rendered up to and including the Confirmation Date, (ii) a liability incurred and paid in the ordinary course of

business by the Debtor; or (iii) an Allowed Administrative Expense, must file with the Bankruptcy Court and serve on the Debtor and its counsel, notice of such Administrative Expense within fifteen (15) days after the Confirmation Date. Such notice must identify: (i) the name of the holder of such Claim; (ii) the amount of such Claim; (iii) the basis of such Claim; and (iv) all written documentation supporting such Claim. Failure to file this notice timely and properly shall result in such claim for the Administrative Expense being forever barred and discharged.

(2)     Allowance of Administrative Expenses. An Administrative Expense with respect to which notice has been properly filed pursuant to Section 4.1(a) of the Plan shall become an Allowed Administrative Expense if no objection is filed within thirty (30) days after the filing and service of notice of such Administrative Expense. If an objection is timely filed, the Administrative Expense shall become an Allowed Administrative Expense only to the extent Allowed by Final Order.

(3)     Payment of Allowed Administrative Expenses. Each holder of an Allowed Claim for an Administrative Expense other than a professional holding such a claim shall receive, at the Debtor's option: (i) the amount of such holder's Allowed Claim in one Cash payment on the later of the Effective Date or the tenth Business Day after such Claim becomes an Allowed Claim; (ii) the amount of such holder's Allowed Claim in accordance with the ordinary business terms of such expense or cost; or (iii) such other treatment as may be agreed to in writing by the holder of such Administrative Expense and the Debtor.

(4)     Payment of Allowed Administrative Expenses To Professionals. Each holder of an Allowed Administrative Claim that is a professional shall be paid in full by Debtor on the date upon which an order approving such claim becomes final and non-appealable. Debtor shall make payment of such fees and expenses in full. Professional fees and expenses incurred after the Confirmation Date shall be the obligation of the Reorganized Debtor and shall be payable by the Reorganized Debtor and/or Hall promptly and without the need for application to or approval by the Bankruptcy Court. Hall's guarantee of payment of professional fees and expenses is reaffirmed by Hall and shall continue until all of such fees and expenses are paid in full.

4.2     Priority Tax Claims. Each holder of a Priority Tax Claim, unless addressed otherwise herein, shall receive, at the Debtor's option: (a) the amount of such holder's Allowed Claim in one Cash payment on the Effective Date; or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Debtor.

4.3     Un-matured Secured Tax Claims. Each holder of an Un-matured Secured Tax Claim shall be paid by the Debtor at the time the Un-matured Secured Tax Claim becomes due and payable and in accordance with the Debtor's ordinary practice.

# ARTICLE 5

## TREATMENT OF CLAIMS AND CURRENT PARTNERSHIP INTERESTS

5.1     Class 1 – Morgan Stanley Claim.     The amount of the Morgan Stanley Claim shall be $11,766,131.54 plus any and all amounts that Morgan Stanley is entitled to under Section 506 of the Bankruptcy Code.  No part of the Allowed Claim of Morgan Stanley shall be unsecured and nothing herein shall impair the Lien of Morgan Stanley in the Collateral.  On or before the Effective Date, the Debtor will execute the New Bank Note in the amount of the Morgan Stanley Claim which will supercede and replace the Current Bank Note. The New Bank Note will mature on a date that is eighty-four (84) months from the Effective Date at which time Debtor shall pay all outstanding principal and unpaid accrued interest.  The New Bank Note shall bear interest at the rate stated in the Current Bank Note provided that no default rate of interest may be charged on any default that may have occurred prior to the Effective Date.  Monthly payments of principal and accrued interest will be paid on the New Bank Note with the first payment being due on the first day of the first month following the Effective Date and with all other subsequent monthly payments being due on the first day of each succeeding month. The monthly payments shall be calculated based on  a twenty-five (25) year amortization schedule. Payments shall first be applied to accrued interest, next to unpaid principal, then to any costs or expenses for which Borrower is obligated under the Loan Documents.  The monthly payment obligations due under the New Bank Note will be made as follows: a) *first,* Morgan Stanley shall make such monthly payments from the Interest Reserve until depleted.  Morgan Stanley shall no longer charge or collect from the Debtor any funds to secure payment of Debtor's interest obligations; b) *second,* Morgan Stanley shall make such monthly payments from the Insurance Reserve until the Insurance Reserve holds an amount sufficient to pay Debtor's prior year insurance obligations.  Morgan Stanley shall no longer charge or collect any funds from the Debtor to secure payment of Debtor's insurance obligations in excess of such amounts; c) *third,* Morgan Stanley shall make such monthly payments from the Tax Reserve until the Tax Reserve holds an amount sufficient to pay Debtor's prior year tax obligations.  Morgan Stanley shall no longer charge or collect from the Debtor any funds to secure payment of Debtor's tax obligations in excess of such amounts; d) *fourth,* Morgan Stanley shall make such monthly payments from the FF&E Reserve until the FF&E Reserve is depleted.  Morgan Stanley shall no longer charge or collect from the Debtor any funds to secure Debtor's furniture, fixture and equipment obligations; d) *fifth,* Morgan Stanley shall make such monthly payments from any other monies paid to Morgan Stanley by the Debtor and held in reserve for future obligations; and e) *sixth,* the Debtor shall make all payments thereafter.  Upon confirmation, any and all defaults that have occurred under the Loan Documents shall be deemed cured. The replacement of the Debtor's general partner shall not constitute an event of default or be construed as a sale or encumbrance under the Loan Documents.  Once any Specified Reserve Account is either depleted or reduced to the maximum amount allowed herein, Morgan Stanley will pay the applicable expense from that Specified Reserve Account when it comes due.  Morgan Stanley may thereafter charge Debtor an amount necessary to replenish a Specified Reserve Account only as allowed herein. The terms of the New Bank Note shall be identical to the terms of the Current Bank Note except to the extent inconsistent with the terms of the Plan.

5.2    Class 2 – Secured Denton County/City Tax Claims.  Denton County/City shall retain any lien it currently holds and will receive payment in full of its Allowed Denton County/City Tax Claim upon the later of thirty (30) days after the Effective Date or the day upon which they become due.

5.3    Class 3 – Priority Employee Claims.  Each holder of an Allowed Priority Employee Claim against the Debtor shall be paid in accordance with the Debtor's pre-petition custom and practice, if not already paid pursuant to order of the Bankruptcy Court entered March 18, 2010.

5.4    Class 4 – Comptroller Claims.  The Texas Comptroller Of Public Accounts will receive on account of its Allowed Comptroller Claims one hundred (100%) percent of its Allowed Comptroller Claims to be paid on or before thirty (30) days after the Effective Date or the day upon which they become due.

5.5    Class 5 – Unsecured Claims.  Each holder of an Allowed Unsecured Claim will receive on account of its Allowed Unsecured Claim one hundred (100%) percent of their Allowed Unsecured Claim to be paid in full before January 31, 2017. In the event that the Debtor is permitted by the Court to use the Reserves to fund obligations under the Plan, each holder of an Allowed Unsecured Claim will receive its proportionate share of the following yearly payments: 2010 - $60,000; 2011 -$100,000; 2012- $33,000; 2013-$70,000; 2014-$70,000; and 2015-$71,573. In the event that the Debtor is *not* permitted by the Court to use the Reserves to fund obligations under the Plan, each holder of an Allowed Unsecured Claim will receive its proportionate share of the following yearly payments: 2010-$0; 2011-$0; 2012-$20,000; 2013-$40,000; 2014-$55,000; 2015-$192,195; and 2016-$97,448.  Yearly payments are to be made on or before January 31 of the following year.  Debtor is required to make such payments only until each holder of an Allowed Unsecured Claim is paid in full and not thereafter.  Simple interest at the rate of two and ½ percent (2.5%) *per annum*  will accrue and be paid on the Unsecured Claims.

5.6    Class 6 - Subordinated Insider Claims.  Upon full payment to all holders of Class 5 Allowed Unsecured Claims, each holder of an Allowed Subordinated Insider Claim will receive on account of its Allowed Subordinated Insider Claim one hundred (100%) of their Allowed Unsecured Claim to be paid in full before January 31, 2017.  Simple interest at the rate of two and ½ percent (2 1/2%) *per annum*  will accrue and be paid on the Unsecured Claims.

5.7    Class 7 – Current Partnership Interests.  All Current Partnership Interests in the Debtor shall be canceled on the Effective Date and New Partnership Interests shall be issued to the holders of Current Partnership Interests in the same percentage and amount as the Current Partnership Interests.

# ARTICLE 6

## ACCEPTANCE OR REJECTION OF PLAN

6.1     Classes Entitled to Vote.  Each impaired Class of Claims and Current Partnership Interests shall be entitled to vote separately to accept or to reject the Plan.  Any unimpaired Class of Claims or Current Partnership Interests shall not be entitled to vote to accept or to reject the Plan. Classes 1, 5 and 6 are impaired and holders of such Allowed Claims therefore are entitled to vote on the Plan.

6.2     Class Acceptance Requirement.  A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.  A Class of Partnership Interests shall have accepted the Plan if it is accepted by at least two-thirds (2/3) of the number of the Allowed Current Partnership Interests in such Class that actually have voted on the Plan.

6.3     Cramdown.  This Section shall constitute the Debtor's request, pursuant to section 1129(b)(1), that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) may not be met.

# ARTICLE 7

## MEANS OF IMPLEMENTATION OF THE PLAN

7.1     On the Effective Date, the Reorganized Debtor shall assume all obligations to pay all Allowed Claims pursuant to this Plan.

7.2     On the Effective Date, all right, title, and interest in and to the Assets shall vest in the Reorganized Debtor.

7.3     The Reorganized Debtor shall have the powers and duties specified in this Plan together with all other powers of a Texas limited partnership.  Such powers shall include, without limitation, the power to object to Claims, to administer Cash and Cash on Hand and to operate the business of the Reorganized Debtor subject only to any limitations imposed by the Plan.  The Reorganized Debtor may operate without approval from the Bankruptcy Court.

7.4     The Reorganized Debtor shall own all Avoidance Actions and all Litigation Claims and shall have full power to institute, proceed to trial and appeal, settle or dismiss any Avoidance Action or Litigation Claim without approval from the Bankruptcy Court.

7.5     Upon the Effective Date, the Reorganized Debtor shall be authorized to issue the New Partnership Interests to the Current Partnership Interest Owners in the same percentage and amount as the Current Partnership Interests are held.  Each Current Partnership Interest Owner shall hold in the New Partnership Interest any and all rights they presently hold in the Current

Partnership Interest. The general partner of the Reorganized Debtor shall have all of the duties, responsibilities, and powers of a general partner of a Texas limited partnership.

7.6    Confirmation of the Plan shall be deemed to constitute a permanent injunction against maintenance or commencement of any action against Debtor arising out of any events occurring prior to the filing of this case and all holders of Claims against Debtor are permanently enjoined with respect to such Claims: (a) from commencing or continuing any action or proceeding of any kind with respect to any such Claim against the Reorganized Debtor and/or the Assets; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets and/or the Reorganized Debtor; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets and/or the Reorganized Debtor; (d) from asserting any right of subrogation or recoupment of any kind against any obligation due the Debtor or the Reorganized Debtor; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and all Claims and causes of action held by all Entities against the Debtor and the Reorganized Debtor are released and discharged except the obligations of the Reorganized Debtor pursuant to the provisions of the Plan; provided, however, that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims and Partnership Interests shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.

7.7    The Reorganized Debtor shall: (i) be solely responsible for pursuing and/or settling all causes of action owned by the Reorganized Debtor and for distribution of all cash distributions contemplated by the Plan; (ii) have the right and power to enter into any contract or agreements binding the Reorganized Debtor in connection with the performance of its duties; (iii) have power to issue or arrange for the issuance of its Partnership Interests to New Partnership Interest Owners; (iv) have power to borrow funds and/or obtain investors and/or sell or encumber its real estate for valid business purposes including funding any cash obligations pursuant to the Plan, funding expansion of Debtor's business as contemplated by Debtor's business plans submitted in support of confirmation of the Plan; (v) have power to do all acts contemplated by the Plan; and (vi) have sole discretion to settle or compromise any claim, cause of action, chose-in-action or litigation and settle any such claim, cause of action, chose-in-action or litigation, without approval of the Bankruptcy Court.

7.8    Subject to the following, the Debtor reserves the right to revoke and withdraw this Plan before the entry of the Confirmation Order. If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or to prejudice in any manner the rights of the Debtor, or person in any further proceedings involving the Debtor or to provide the basis for any claim against Debtor.

# ARTICLE 8

## PROVISIONS GOVERNING DISTRIBUTION

8.1     All payments or distributions to be made by the Debtor pursuant to the Plan shall be made to the holders of Allowed Claims.  Any payments or distributions to be made by the Debtor pursuant to the Plan shall be made on the Effective Date except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court.  Any payment or distribution by the Debtor pursuant to this Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited by the Debtor into the United States Mail.

8.2     Distributions to be made to any holder of an Allowed Claim under the Plan shall be made by the Reorganized Debtor.

8.3     Payments of Cash to be made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

8.4     Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed; or if the Reorganized Debtor has been notified of a change of address, at the address set forth in such notice).  All Unclaimed Property shall revert to the estate for distribution of an additional *pro rata* Share to holders of Other Unsecured Claims, and the Claim of any holder with respect to such property shall be discharged and forever barred.

8.5     Checks issued by the Reorganized  Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof.  Requests for re-issuance of any check shall be made directly to the Reorganized  Debtor by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of the first anniversary of the Effective Date or ninety (90) days after the date of delivery of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

8.6     Except as provided otherwise herein, no interest shall be paid on any Claim after the Petition Date.  Except as provided otherwise herein, interest will be paid through the Petition Date only in accordance with the applicable loan documents.

8.7     The Debtor expressly reserves the right, in its sole discretion, to prepay in Cash any obligation created pursuant to the Plan, and no interest shall accrue with respect to such obligation from and after the date of such prepayment.  There shall be no penalty associated with the Debtor's prepayment of any obligation in the Plan.  The Debtor also expressly reserves the right to negotiate post-confirmation with the holder of any Allowed Claim who may desire to change the treatment elected with respect to such Allowed Claim and to agree to any change of treatment of such Allowed Claim, provided such treatment does not result in a violation of the

absolute priority rule or otherwise materially affect any treatment of any class of creditors under this Plan.

8.8     Any monies utilized to pay obligations hereunder shall become general funds of the Reorganized Debtor.

8.9     Distributions under the Plan to Classes 2-7 shall be completed by January 31, 2017.

## ARTICLE 9

## PROCEDURES FOR RESOLVING AND TREATING
## CONTESTED AND CONTINGENT CLAIMS

9.1     Unless a different date is set by order of the Bankruptcy Court, all objections to Claims shall be served and filed no later than one hundred eighty (180) days after the Confirmation Date or one hundred twenty (120) days after a particular proof of claim is filed, whichever is later.   All proofs of claim filed after more than thirty (30) days after the Confirmation Date shall be of no force and effect, shall be deemed disallowed, and will not require objection.

9.2     (a)     Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Contested Claim unless and until such Contested Claim becomes an Allowed Claim.

        (b)     In determining the amount of distributions to be made under the Plan to holders of Allowed Claims, the appropriate distributions required by the Plan shall be made according to estimates and subject to the provisions of the Plan.

        (c)     As soon as practicable after a Contested Claim becomes fixed, the holder of an Allowed Claim shall receive a distribution in an amount equal to the aggregate of all the distributions that such holder would have received had such Contested Claim been an Allowed Claim on the Effective Date.   No interest shall be paid on account of a Contested Claim that later becomes an Allowed Claim.

9.3     Distributions to each holder of a Contested Claim, to the extent that such Claim becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which such Claim belongs, and such holders shall receive all distributions to which such holders would have been entitled had such Claim been an Allowed Claim on the Effective Date.

# ARTICLE 10

## EXECUTORY CONTRACTS AND LEASES

10.1    The Plan incorporates a motion to assume the following executory contracts and personal property leases (with applicable cure amounts): the Franchise Agreement with Holiday Hospitality Franchising, Inc. ($86,087.00 plus attorneys' fees, costs and any unpaid postpetition amounts as allowed by the Court); the Management Agreement with DePalma Hotel Corporation ($4,452.00); Acxential Business Solutions ($3,832.00); Alamo Leasing Co. ($1,664.00); Champion Automatic Fire ($225.00); CIT Technology ($548.00); Denton Lawn Sprinkler ($3,044.00); Ecolab ($2,278.00); First Data Merchant Svcs. ($126.00); Kone, Inc. ($2,112.00); Muzak, LLC ($646.00); Sterling National Bank ($1082.00); Tharaldson Communications, Inc. ($135.00); American Society of Composers ($0.00); BMI ($0.00); Cash Technologies of America ($0.00); I-35 Denton Station, Ltd. ($0.00); Newmarket International, Inc. ($0.00); Marcus Cable Associates, LLC ($0.00); Pitney Bowes Credit Corp. ($0.00); Polar Sales & Leasing ($0.00); Technifax Office Solutions ($0.00); and Wasco Capital Services, LLC ($0.00). All other leases and/or executory contracts shall be rejected upon confirmation including any agreement with Brink's and Global Consultants to the extent that it has not already expired by its own terms.  In the event that no objection is filed to a proposed cure amount for any of these agreements on or before ten (10) days prior to the Confirmation Hearing, confirmation of the Plan shall constitute an order finding that the Debtor has not defaulted under that agreement, and that Debtor has provided cure and adequate assurance of future performance under that agreement. All cure payments that may be required by Bankruptcy Code Section 365(b)(1) under any executory contract or unexpired lease that is assumed, or assumed and assigned, under this Plan shall be made by the Debtor on or as soon as practicable after the Effective Date, but in no event later than thirty (30) days after the Effective Date. The Court shall retain jurisdiction to determine the amount of any cure amount under any of the agreements.

# ARTICLE 11

## MAINTENANCE OF CAUSES OF ACTION

11.1    The Reorganized Debtor shall retain all causes of action belonging to the estate pursuant to section 541 of the Bankruptcy Code.  All Avoidance Actions and Litigation Claims shall remain the property of the Reorganized Debtor.

# ARTICLE 12

## CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN

12.1    The Effective Date of the Plan shall not occur unless and until the following conditions shall have been satisfied or waived by the Debtor, as determined in their sole discretion: (a) the Confirmation Order shall have been entered and (b) no stay of the Confirmation Order shall be in effect on the Effective Date.

# ARTICLE 13

## DISCHARGE

13.1   To the extent permitted by section 1141 of the Bankruptcy Code, all consideration and Assets distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor or any of its assets or properties; and except as otherwise provided herein, upon the Effective Date, the Debtor and its successors-in-interest shall be deemed discharged and released pursuant to section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims treated in the Plan, as well as all other Claims, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not:  (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code; (c) the holder of a Claim based upon such debt has accepted this Plan; or (d) the Claim has been Allowed, disallowed, or estimated pursuant to section 502(c) of the Bankruptcy Code.  The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and its successors-in-interest other than those obligations specifically set forth pursuant to this Plan.

# ARTICLE 14

## SUBSTANTIAL CONSUMMATION

14.1   This Plan of Reorganization shall be consummated substantially upon the commencement of the first distributions of Cash to the holders of Allowed Claims under this Plan.

# ARTICLE 15

## RETENTION OF JURISDICTION

15.1   Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, for the purposes of sections 105(a) and 1142 of the Bankruptcy Code, and, subject to the provisions of the following subparagraph (b), for, among other things, the following purposes:

(a)     To hear and to determine any and all objections to or applications concerning the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense (except fees and expenses of professionals as described in subparagraph [b] below), Claim, or Current Partnership Interest;

(b)     To hear and determine any and all applications for payment of fees and expenses to be paid from the Debtor's estate to attorneys or other Professionals pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed to Professionals from the Debtor's estate under the Bankruptcy Code, and any and all objections thereto, provided, however, that no jurisdiction is retained to hear or allow fees and expenses of Professionals arising after the Effective Date, including, without limitations, any Professionals who are retained to pursue Avoidance Actions or Litigation Claims;

(c)     To hear and determine pending applications for the rejection, assumption, or assumption and assignment of unexpired leases and executory contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect of the assumption or rejection of any executory contract or lease or any claimed termination thereof, including any rights affected by confirmation of this Plan;

(d)     To hear and determine any and all adversary proceedings, applications, or contested matters, including any remands from any appeals with respect to causes of action arising before or during the pendency of the Chapter 11 Case;

(e)     To hear and to determine all controversies, disputes, and suits that may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan provided that jurisdiction shall not be retained for the purpose of supervision or review of the Debtor's economic performance, business operations or financial status and transactions after the Effective Date;

(f)     To liquidate any disputed, contingent, or unliquidated claims;

(g)     To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(h)     To enter and to implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)     To enable the Reorganized Debtor to prosecute any and all proceedings that may be brought to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which the Debtor may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws, including causes of action, controversies, disputes and conflicts between the Debtor or Reorganized Debtor and any other party, including but not limited to, any causes of action or objections to Claims, Avoidance Actions or equitable subordination.

(j)	To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(k)	To enter and to implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or to enforce the terms and conditions of the Plan and the transactions contemplated thereunder;

(l)	To hear and to determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and

(m)	To enter a final decree closing the Chapter 11 Case.

15.2	If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to this Chapter 11 Case, this Section of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

# ARTICLE 16

## MODIFICATIONS TO THE PLAN

16.1	Modifications of this Plan may be proposed in writing by the Debtor at any time before confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code.  This Plan may be modified at any time after confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.

16.2	The Debtor, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Current Partnership Interests, may correct any nonmaterial defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  The Debtor may undertake such nonmaterial modification pursuant to this Section insofar as it does not adversely change the treatment of the Claim of any Creditor or the interest of any Current Partnership Interest holder who has not accepted in writing the modification.

# ARTICLE 17

## MISCELLANEOUS PROVISIONS

17.1    <u>Severability</u>.  Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Current Partnership Interest or transaction, the Debtor may modify the Plan in accordance with Section 16.1 or 16.2 of the Plan, as applicable, so that such provision shall not be applicable to the holder of any Claim or Current Partnership Interest.

17.2    <u>Setoffs</u>.  The Debtor may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever the Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such holder.

17.3    <u>Compliance with All Applicable Laws</u>.  If notified by any governmental authority that they are in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its businesses, the Debtor shall comply with such law, rule, regulation, or order; provided that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate reserve has been set aside on the books of the Debtor.

17.4    <u>Binding Effect</u>.  The Plan shall be binding upon, and shall inure to the benefit of, the Debtor, the Reorganized Debtor, the holders of the Claims, the holders of Current Partnership Interests, the holders of New Partnership Interests, and all Entities receiving notice of the Plan and their respective successors and assigns.

17.5    <u>Governing Law</u>.  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

17.6    <u>Payment of Statutory Fees</u>.  The Reorganized Debtor shall be responsible for the timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until the clerk of the court closes the case.  The Reorganized Debtor shall file with the Bankruptcy Court, and serve on the United States Trustee, a quarterly financial report for each quarter (or portion thereof) that the case remains open in a format prescribed by the United States Trustee and provided to the Reorganized Debtor by the United States Trustee.

17.7    <u>Post-Confirmation Professional Fees</u>.  Post-Confirmation fees and expenses of professionals shall not be subject to approval by the Court.

17.8 <u>Timing of Distributions</u>. Any payment or distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

17.9 <u>Filing of Additional Documents</u>. The Debtor may file, as Plan Documents, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Nothing herein requires or supposes that implementation of the Plan requires any Plan Documents to be executed or filed.

17.10 <u>Certifications</u>. The failure to make any certification required to be made pursuant to the Plan on a timely basis shall result in the Debtor withholding, without interest, any distribution to which the Person required to make such certification would otherwise be entitled. Such withheld distribution shall be made only upon such Person's compliance with the certification requirements of the Plan.

17.11 <u>Payment of Fees</u>. The Reorganized Debtor or, as appropriate, the successful Plan proponent shall be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. § 1030(a)(6). After confirmation, the Reorganized Debtor or, as appropriate, the successful Plan proponent shall file with the Court and serve on the United States Trustee a monthly financial report for each month (or portion thereof) the case remains open. Such report shall be in the form prescribed by the United States Trustee. Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Current Partnership Interest or transaction, the Debtor may modify the Plan in accordance with Section 16.1 or 16.2 of the Plan, as applicable, so that such provision shall not be applicable to the holder of any Claim or Current Partnership Interest.

(Remainder of the Page Intentionally Left Blank)

Dated: July 21, 2010.

DENTON LONE OAK HOLDINGS, L.P.

By: _/s/ Joe N. DePalma_
    Joe N. DePalma, Chief Executive Officer

Submitted by:

HIERSCHE, HAYWARD,
    DRAKELEY & URBACH, P.C.

By: _/s/ Russell W. Mills_
    Russell W. Mills (SBN 00784609)
    Jason M. Katz (SBN 24038990)

15303 Dallas Parkway
Suite 700
Addison, Texas  75001
Telephone:  (972) 701-7000
Facsimile:   (972) 701-8765