IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 10-40836-11-br |
| DENTON LONE OAK HOLDINGS, | § | (Chapter 11) |
| L.P., | § | |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| TASK FORCE LOGISTICS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | ADVERSARY ACTION NO. _____ |
| VS. | § | |
| | § | |
| DENTON LONE OAK HOLDINGS, L.P., | § | |
| LONE OAK HOSPITALITY, LTD., AND | § | |
| MORGAN STANLEY MORTGAGE | § | |
| CAPITAL HOLDINGS, LLC, | § | |
| | § | |
| Defendants. | § | |

## ORIGINAL COMPLAINT

Plaintiff, TASK FORCE LOGISTICS, INC. ("**TFL**") complains of Defendants

DENTON LONE OAK HOLDINGS, L.P. ("**DLOH**"), LONE OAK HOSPITALITY, LTD.

("**LOH**") and MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS, LLC ("**Morgan

Stanley**") (DLOH, LOH, and Morgan Stanley referred to collectively as "**Defendants**"), as

follows:

## Parties

1.      TFL is a corporation organized under the laws of the State of Florida.  TFL is a creditor and party-in-interest in the above- referenced bankruptcy case (the "**Case**").  TFL has sometimes gone by the name TFL, Inc.

2.      DLOH is the debtor in the Case.  No Trustee or examiner has been appointed. DLOH may be served with process in this action through its officer/registered agent designated for service of process, Gaylord Hall, 9341 Loma Vista Drive, Dallas, Texas 75243 and/or through its counsel of record.

3.      LOH is a Texas limited partnership with its principal place of business located in Denton, Texas.  It may be served with process in this action through its registered agent Gaylord Hall, 9341 Loma Vista Drive, Dallas, Texas 75243 or 1434 Centre Place Drive, Denton, Texas 76205-1212.

4.      Morgan Stanley is a secured creditor in the Case.  Morgan Stanley may be served with process in this action through its officer or agent designated for service of process in this action, CT Corporation, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234 and/or through its counsel of record.

## Jurisdiction and Venue

5.      The Court has subject matter jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. 57.

6.       This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

7.      Venue of this action is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**Facts**

a. **The $1.5 Million Secured Obligation Owing to TFL**

8.      On January 19, 2007, LOH ("**LOH**"), as Maker, executed that certain *Second Lien Promissory Note* ("**Note**") in favor of TFL, Inc. (a/k/a Task Force Logistics, Inc.) ("**TFL**"), as Payee, in the original principal amount of $1,500,000.  A true and correct copy of the Note is attached hereto as **Exhibit "1"** and incorporated herein by reference as if fully set forth.  TFL is the owner and holder of the Note.

9.      The Note was secured by a *Second Lien Deed of Trust* ("**Deed of Trust**") dated January 26, 2007, in favor of TFL against certain real property and improvements as described therein, which is also the real property and improvements (the "**Property**") at issue in the above referenced bankruptcy case (the "**Case**").  A true and correct copy of the Deed of Trust is attached hereto as **Exhibit "2"** and incorporated herein by reference as if fully set forth.  TFL is the owner and holder of the Deed of Trust.  The Deed of Trust was recorded in the deed/property records of Denton County, Texas on January 30, 2007.

10.      At the time the Note and Deed of Trust were executed, Colonial Bank, N.A. held a first lien Deed of Trust against the Property securing the payment of a promissory note in the principal amount of $9,820,000.00, which Deed of Trust was dated March 28, 2006, and recorded on March 31, 2006.

b. **LOH Refinances**

11.      On or about June or July of 2007, TFL was advised by LOH that it was in the process of refinancing the obligation owing to Colonial Bank through a loan to be obtained through Morgan Stanley Mortgage Capital Holdings, LLC ("**Morgan Stanley**").  As part of the refinancing, the Note owing to TFL was to be fully satisfied whereupon TFL would release its

lien against the Property. Closing on the refinancing was to take place through and at the offices of Denton County Title Company, Denton, Texas ("**DCTC**").

### c. The Payoff to TFL

12. On July 19, 2007, Linda Stewart, the Secretary/Director of TFL sent a pay-off amount to DCTC in the amount of $1,500,000, together with one year's interest of $180,000 noted and interest reflected at a rate of 12% per annum, and a daily interest rate of $493.15. A true and correct copy of this document is attached hereto as **Exhibit "3"** and incorporated herein by reference as if fully set forth.

13. On July 20, 2007, Ms. Stewart sent a memo to DCTC expressing her understanding that the payoff on the Note would be $1,594,684.93 as of July 29, 2007, with a per diem interest rate of $493.15. A true and correct copy of this document is attached hereto as **Exhibit "4"** and incorporated herein by reference as if fully set forth. Her instructions to DCTC were to wire $400,000, plus $25,249.31 to Old Harbor Bank account of TFL and to hold the rest, $1,169,435.62 in escrow until instructions were received from Robert Stewart upon his return to the United States on or about July 28, 2007.

### d. The Closing

14. On July 30, 2007, the day before closing on the refinancing involving Morgan Stanley was to take place (the "**Closing**"), Robert Stewart, the President of TFL, sent a letter by fax to DCTC instructing them to wire the amount of $425,249.31 to Old Harbor Bank, Clearwater, Florida into the account maintained by TFL and $574,750.69 to an account that he would advise them of at a later date. A true and correct copy of this letter is attached hereto as **Exhibit "5"** and incorporated herein by reference as if fully set forth. The letter provides: "This

totals $1,000,000 and this is the total payoff as of July 30, 2007. The per diem is $493.15. This letter supersedes the previous payoff letter from Linda Stewart."

15. At the last minute request of and as an accommodation to Gaylord Hall and Glenn Gunter, who were, at that time, the principal owners, through general and limited liability interests, of LOH, Mr. Stewart agreed to receive the total of $1,000,000 of the $1,595,178.08 due under the Note on the basis that he would have security on the balance of the $595,178.08 that remained due and owing under the Note.

16. The closing on the refinancing involving Morgan Stanley took place on July 30, 2007 (the "**Closing**"). At that time, LOH remained obligated to TFL in the amount of $595,178.08, which includes interest through July 30, 2007, together with interest thereon from July 30, 2007. This amount has not been paid to or forgiven by TFL.

17. On July 31, 2007, Mr. Stewart sent instructions to wire the remaining funds to the bank account of Task Force Logistics International, Ltd. in Budapest, Hungary. A true and correct copy of this document is attached hereto as **Exhibit "6"** and incorporated herein by reference as if fully set forth.

18. At or following the Closing, DCTC paid TFL $1,000,000. A true and correct copy of the closing statement involved in the refinancing transaction, dated July 30, 2007, is attached hereto as **Exhibit "7"** and incorporated herein by reference as if fully set forth.

19. In June 2010, TFL, acting by and through its counsel, conducted discovery of DCTC with respect to the July 30, 2007, Closing. Among the documents produced by DCTC was a letter also dated July 30, 2007, addressed to TFL "ATTN: Robert W. Stewart, President" and signed by LOH by and through its President, Gaylord Hall. A true and correct copy of this letter is attached hereto as **Exhibit "8"** and incorporated herein by reference as if fully set forth.

TFL had no knowledge of this letter prior to June 2010. The letter was provided to DCTC without TFL's knowledge or consent. The letter provides:

> This letter will serve as our agreement to provide you an equity position in Lone Oak Hospitality, Ltd. and/or a Note for the equivalent of $595,178.08 payable at 17% annual interest which will be mutually determined within the next ten days. This agreement will be in compliance with Morgan Stanley's Deed of Trust so that there will be no default in said Deed of Trust.

The substance of the letter never happened. There was no agreement between TFL and LOH as set forth in the letter.

20.     As set forth in the LOH July 30, 2007, letter it was TFL's understanding that LOH owned the Property at and after the July 30, 2007, Closing.

21.     There was agreement between TFL and LOH as set forth in LOH's July 30, 2007 letter and LOH took no action to provide TFL with a security interest and/or note.

### e.   The Release

22.     In conjunction with the anticipated payoff of the entire amount due on the Note, Ms. Stewart was provided a form of *Release of Lien* ("**Release**"), which she signed on July 25, 2007, which purports to release all liens granted in favor of TFL against the Property. On information and belief, the Release was prepared by either DCTC or its counsel. The Release was not prepared by TFL. A true and correct copy of the Release is attached hereto as **Exhibit "9"** and incorporated herein by reference as if fully set forth.

23.     DCTC recorded the Release executed by TFL as to the Property without any further contact with TFL. The Release was signed on July 25, 2007, and is dated July 27, 2007, prior to the time TFL was advised and agreed to accept less than full satisfaction of obligations owing on the Note at Closing.

24.     TFL did not instruct or authorize DCTC to record the Release. DCTC did not contact TFL to confirm recordation of the Release was appropriate and/or authorized, particularly in light of the fact that the payment amount on the Note has changed on the date of Closing. TFL does not recall being notified that the Release was or would be filed. Given that it had received less than full satisfaction of the obligation owing to it under the Note, TFL had no intention of fully releasing its lien against Property.

f.     **The Transfer of the Property from LOH to DLOH**

25.     Long after the Closing, TFL also discovered that, in conjunction with the Closing, LOH conveyed the Property to DLOH (the Debtor in the Case). TFL was not aware of and was never advised by LOH, Gaylord Hall, or Glenn Gunter, that the Property would be conveyed to DLOH at the Closing. In fact, every indication to TFL, through correspondence and communications with LOH and its principals, was that LOH would retain possession and ownership of the Property. TFL relied upon this in agreeing to forgo full payment of the amounts due under the Note. This is confirmed by the undisclosed letter (Exhibit "7" hereto) from LOH (through Gaylord Hall) to TFL (ATTN: Robert W. Stewart, President).

26.     DLOH is a Texas limited liability company. Lone Oak GP, LLC ("**LOGP**") is the general partner of Debtor DENTON LONE OAK HOLDINGS, L.P., a Texas limited partnership ("**DLOH**"). LOGP is owned 100% by Gaylord Hall. Lone Oak Hospitality, Ltd. ("**LOH**"), a Texas limited partnership, is the largest limited partner of DLOH, holding a 99% limited partnership interest in DLOH as of June 30, 2007.[1] Lone Oak Hospitality, Texas, LLC ("**LOHT**"), a Texas limited liability company, is the 1% general partner of LOH. LOHT is owned 100% by Gaylord Hall. Teasley Partners, Ltd. ("**Teasley**"), a Texas limited partnership,

---

[1] Rainer Income & Growth Fund III, LLC became a limited partner of DLOH in July 2009, with a 10% limited partnership interest.

owns a 60% limited partnership interest in LOH. Rustown Homes, Inc. owns a 39% limited

partnership interest in LOH. On information and belief, Rustown is owned 100% by Gaylord

Hall. On information and belief, Teasley Street, L.L.C. ("**TS**"), a Texas limited liability

company, is the general partner of Teasley and owns a 1% general partnership interest. Glenn

Gunter and JR Lacey each own 50% of TS. JR Lacey also owns a 29.5% limited partnership

interest in Teasley. Bunker Investments, Ltd. ("**Bunker Investments**"), a Texas limited

partnership, owns a 13.33% limited partnership interest in Teasley. Bunker Investments is

owned 100% by Glenn Gunter. Waterford Investors, Ltd., a Texas limited partnership

("**Waterford**") owns a 56.17% limited partnership interest in Teasley. Waterford is owned

100% by Glenn Gunter.

### g. Balance Due TFL

27. As of the Closing (July 30, 2007), the balance due on the Note was $595,178.08.

Interest has continued to accrue on this amount since Closing. As of the filing of the Case,

DLOH was indebted to TFL in the amount of $785,867.92, together with interest due thereon at

the rate of $361.6438 per day thereafter and reasonable and necessary attorneys' fees (to the

extent it is determined that the value of the Property exceeds the amount of indebtedness owing

to all parties claiming liens against the Property). As a result of the actions of the Defendants,

TFL risks recovering less than the full amount of its indebtedness.

### First Cause of Action – Fraud/Fraudulent Misrepresentation/ Conspiracy to Defraud/ Fraudulent Concealment

28. TFL incorporates by reference paragraphs 8 -28 as if repeated verbatim.

29. Whether and/or to what extent TFL was to provide a release to LOH at closing

was material to TFL.

30.     Whether and/or to what extent the Property was being transferred to DLOH at or following Closing was material to TFL.

31.     Given the relationship of Messrs. Hall and Gunter to DLOH and the fact that TFL was not made aware of the transfer of the Property to DLOH, was not aware of the letter prepared by Mr. Hall and provided to DCTC, as well as the fact that the Release was inappropriately and/or mistakenly filed and/or was filed without direct or indirect authorization of TFL, it is apparent that Defendants have participated in a conspiracy to defraud TFL into releasing its lien against the Property and causing TFL to suffer the risk of collecting the indebtedness evidenced by the Note.  In essence, LOH removed all real and personal assets from the partnership.  In addition, it appears that the partners of LOH were not advised of and/or did not consent to the transfer of the Property to DLOH as required under the then existing partnership agreement.

32.     Defendants concealed the filing of the Release and the transfer of the Property to DLOH.  Defendants knew or should have know that, had the true facts been disclosed to TFL, they would have acted in a way so as to protect themselves in the transaction and at Closing to protect their rights and interests in and to the Property.  They would not have permitted the filing of the Release and/or would have insisted on preserving its lien against the Property.  In participating in the Closing, TFL acted on its justifiable belief and understanding that the Property as not being transferred to a third-party and that it would retain a lien against the Property.

33.     TFL has been damaged as a result of the actions of Defendants.  TFL may have lost its lien against the Property as a result of Defendants' conduct.  TFL's lien may be determined to be subordinated to the lien of Morgan Stanley.  TFL may not recover all or part of

the amounts which remain due and owing to it under the Note. TFL has been damaged in the full amount which remains due under the Note.

34. Because Defendants knew or should have known that the representations of material facts set forth above were untrue, that Defendants omitted and/or failed to disclose and/or withheld from TFL certain material facts, e.g., that the Property was being transferred and that TFL would not retain its lien against the Property, were malicious and grossly negligent in nature and, therefore, constitutes conduct that entitled TFL, under applicable law, to the imposition of exemplary damages.

## Second Cause of Action – Reformation of The Release

35. TFL incorporates by reference paragraphs 8 -34 as if repeated verbatim.

36. TFL did not intend to release the entirety of its lien against the Property.

37. The filing of the Release was unauthorized by TFL. It was a mistake. Alternatively, it was filed deceptively and without TFL's knowledge or consent.

38. The Release does not reflect or evidence the true intention of the parties to the transaction.

39. TFL was not aware that DCTC recorded the Release.

40. TFL did not authorize DCTC to record the Release.

41. On information and belief, the filing of the Release was the result of mutual mistake, breach of fiduciary duty, negligence, and/or fraud on the part of one, more than one, or all of the Defendants. Defendants knew or should have known that the full Release was not intended to be filed.

42. To permit the Release to remain filed will work an injustice and inequity against TFL in favor of DLOH and Morgan Stanley.

43.     TFL requests that the Court enter an Order or Judgment reforming the Release to reflect the true intention of the parties, namely that it only releases TFL's lien against the Property as to that portion of Note satisfied at Closing.


### Third Cause of Action – Declaratory Relief

44.     TFL incorporates by reference paragraphs 8 -43 as if repeated verbatim.

45.     A dispute exists between TFL, DLOH and Morgan Stanley with respect to the validity, priority, and extent of TFL's lien against the Property.

46.     TFL requests a declaration from the Court that the Release was not effective to release its lien against the Property to the extent of the amounts which remain due and owing to TFL under the Note.

47.     TFL requests a declaration from the Court that it has a valid lien against the Property.

48.     TFL requests a declaration from the Court that its lien against the Property is superior to the liens of Morgan Stanley against the Property.

49.     Because TFL has had to seek a judicial declaration of relief, TFL seeks to recover its reasonable and necessary attorneys' fees, costs and expenses and all other relief deemed appropriate by the Court.

50.     Given the foregoing, TFL's lien against the Property should survive and, in fact, may be superior to the lien of Morgan Stanley as against the Property.

### Fourth Cause of Action - Attorney's Fees and Costs

51.      Paragraphs 8 – 50 are incorporated by reference as if repeated verbatim.

52.     TFL seeks recovery of reasonable and necessary attorneys' fees and expenses incurred in prosecuting this action, to the extent permitted by applicable law.

53.     TFL seeks recovery of all costs of court as may be allowed by the court in prosecuting this action.

WHEREFORE, PREMISES CONSIDERED, TFL respectfully requests that this Court grant it the relief requested herein and against Defendants as follows:

a.      With respect to the First Cause of Action, damages for fraud as described therein;

b.      With respect to the Second Cause of Action, reformation of the Release as requested therein;

c.      With respect to the Third Cause of Action, declaratory relief as described therein;

d.      With respect to the Fourth Cause of Action, attorneys' fees and costs as described therein; and

e.      For such other and further relief to which it may show itself to be entitled.

Dated: July 28, 2010.

Respectfully submitted,

CANTEY HANGER LLP

By:     /s/Bruce W. Akerly
        Bruce W. Akerly
        Texas Bar No. 00953200

1999 Bryan Street, Suite 3330
Dallas, Texas 75201
Telephone: 214/978-4129
Facsimile: 214/978-4150
Email: bakerly@canteyhanger.com

ATTORNEYS FOR PLAINTIFF
TASK FORCE LOGISTICS, LTD